PATRICIA RIVET MURRAY, Judge.
 

 |, This is a suit for wrongful seizure damages. The plaintiff, Dr. Pamela Stamps Mitchell (“Dr. Mitchell”),
 
 [1]
 
 appeals the judgment of the trial court granting the motion for summary judgment filed by the defendant, Wells Fargo Bank, National Association (“Wells Fargo”), and dismissing all the parties. We find the underlying executory proceedings were properly commenced by the holder of the mortgage note, Washington Mutual Bank (“WMB”). Given Dr. Mitchell’s failure to cure the default specified in the executory proceedings, we find WMB was entitled to complete the executory proceeding despite the mid-foreclosure transfer of the servicing of the mortgage note to Wells Fargo. Because Dr. Mitchell was served with the original notice of seizure, we find she was not entitled to be served with the amended notice of seizure. We therefore affirm.
 

 FACTUAL AND PROCEDURAL BACKGROUND
 

 On April 30, 2001, Dr. Mitchell borrowed $148,724 to purchase a house and the lot on which it was located, bearing the address 4528 Laurel Street, New Orleans, Louisiana (the “Property”). On that same date, Dr. Mitchell executed a note for the borrowed amount, which was secured by a mortgage on the Property. | ?The note was made payable to the original mortgagee, North American Mortgage Company. The mortgage contained a confession of judgment, providing for the acceleration of the amount secured and the sale of the property in the event of a default on the loan. On May 2, 2001, the mortgage was recorded in the mortgage records. Thereafter, North American assigned the mortgage note to Homeside Lending, Inc., who reassigned the mortgage note to WMB.
 

 In 2006, Dr. Mitchell defaulted on her mortgage payments. On December 15, 2006, WMB commenced an executory proceeding. In its petition, WMB described with particularity its right to bring the action as the last holder of the mortgage note and described itself as the “successor to Homeside Lending, Inc.” The trial court ordered the issuance of a writ of seizure and sale.
 

 On January 23, 2007, Dr. Mitchell was served personally with the notice of seizure, which stated that a sheriffs sale was tentatively scheduled for November 2, 2007.
 

 Meanwhile, on January 16, 2007, WMB’s attorney sent a letter to the sheriffs office informing that the mortgage company had requested that the case be placed on hold and that service be withheld as the Property had hurricane damages.
 

 Subsequently, WMB transferred the servicing of the mortgage note to Wells Fargo. On March 27, 2007, Dr. Mitchell and Wells Fargo entered into a “Stipulated Partial Reinstatement/Repayment Agreement.” According to the repayment agreement, Dr. Mitchell agreed to pay accelerated loan payments. The agreement provided that Wells Fargo would “hold legal action only upon receipt of agreed funds and the signed agreement.” Addressing the pending executory proceeding, the agreement provided:
 

 | s“We will instruct our foreclosure counsel to suspend foreclosure proceedings once the funds for partial rein
 
 *1111
 
 statement have been received by the aforementioned date. If you make all the required payments resulting in reinstatement, we will instruct our foreclosure counsel to dismiss foreclosure proceedings and report to credit bureaus accordingly. If you default on total reinstatement or the terms of this repayment agreement, we will resume the foreclosure action.”
 

 Although Dr. Mitchell made a few (about two) payments, she was unable to comply with the payment terms of the repayment agreement.
 

 On July 12, 2007, WMB Mutual filed a Supplemental and Amended Petition incorporating by reference the allegations of its original petition and seeking the issuance of an amended writ of seizure to reflect the payments Dr. Mitchell had made.
 

 On July 17, 2007, the sheriffs office returned the original writ of seizure with the following handwritten notation: “Rec’d said writ on 12/26/06 and recorded same. On 7/12/07, rec’d word to return writ to court
 
 ‘Unsatisfied.
 
 ’ Petition to be amended and amended writ to follow. 7/12/07 Writ
 
 returned
 
 Unsatisfied.”
 

 On July 19, 2007, the trial court ordered that the original petition be amended and that an amended writ of seizure be issued. On September 7, 2007, the sheriff issued an amended notice of seizure. During the following week (September 10 to 17, 2007), the sheriff attempted to serve Dr. Mitchell at her residence on seven occasions. Because the sheriff was unable to serve Dr. Mitchell, WMB filed a motion to appoint a curator, which the trial court granted in October 2007. In November 2007, the curator accepted service on Dr. Mitchell’s behalf.
 

 14On January 3, 2008, the Property was sold at a sheriffs sale to a third party purchaser, Three Dogs, L.L.C. (“Three Dogs”). Upon learning of the sale, Dr. Mitchell filed a petition for preliminary and injunctive relief. The trial court denied the request for preliminary relief, and dismissed her suit.
 

 On February 27, 2008, Dr. Mitchell was evicted from the Property.
 

 On April 11, 2008, Dr. Mitchell filed a Petition to Annul Executory Proceedings and Judicial Sale, and for Damages for Wrongful Seizure against four defendants: (i) Three Dogs; (ii) Paul Valteau, Jr., in his capacity as civil sheriff; (iii) WMB, the petitioner in both the original and amended petitions and the motion to appoint a curator; and (iv) Wells Fargo, who since January 2007, demonstrated that it was the holder of the mortgage note. Dr. Mitchell filed an amended petition for damages for wrongful seizure naming as defendants only WMB and Wells Fargo, effectively dismissing the other two defendants.
 

 On June 17, 2008, Wells Fargo filed peremptory exceptions of no cause of action and res judicata. On October 17, 2008, the trial court denied the exception of no cause of action, but granted in part the exception of res judicata as to any allegation seeking to declare the sale pursuant to the executory proceeding null and void.
 

 On November 12, 2008, WMB filed a Motion to Substitute its receiver, the Federal Deposit Insurance Company, in its place as the proper party defendant, which the trial court granted.
 

 IsOn November 18, 2008, Wells Fargo filed a motion for summary judgment. Following a hearing, the trial court granted the motion and rendered judgment dismissing all the parties. The trial court orally reasoned:
 

 “Pit’s a transaction with a secured property in the executory process once the original writ is served. The fact that they did all this stuff after she defaulted
 
 *1112
 
 on the paper plan [repayment agreement] was really superfluous for my interpretation of law. I don’t see how I can give you any relief in that regard. And the fact that she didn’t receive additional notification that is sufficient documentation in the record that she may well have. But you know, once it starts, it’s a snowball headed down the hill.”
 

 Dr. Mitchell filed a motion for new trial on the basis that the trial court legally erred in dismissing the suit as to WMB since WMB did not join in Wells Fargo’s motion for summary judgment. The trial court denied the motion. This appeal followed.
 
 [2]
 

 DISCUSSION
 

 Appellate courts review the grant of a summary judgment motion
 
 de novo
 
 using the same standard applied by the trial court in deciding the motion for summary judgment.
 
 Samaha v. Rau,
 
 07-1726, p. 3 (La.2/26/08), 977 So.2d 880, 882-83. According to that standard, summary judgment shall be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966 B. “Favored in Louisiana, the summary judgment procedure ‘is designed to secure the just, speedy, and inexpensive | ^determination of every action’ and shall be construed to accomplish these ends.”
 
 King v. Parish National Bank,
 
 04-0337 (La.10/19/04), 885 So.2d 540, 545 (quoting La. C.C.P. art. 966 A(2)).
 

 In determining whether summary judgment is appropriate the two issues a court must resolve are whether there is any genuine issue of material fact, and whether the mover is entitled to judgment as a matter of law.
 
 Ocean Energy, Inc. v. Plaquemines Parish Government,
 
 04-0066, p. 5 (La.7/6/04), 880 So.2d 1, 5. A genuine issue is one as to which reasonable persons could disagree; if reasonable persons could reach only one conclusion, there is no need for trial on that issue and summary judgment is appropriate.
 
 Smith v. Our Lady of the Lake Hosp., Inc.,
 
 93-2512, p. 27 (La.7/5/94), 639 So.2d 730, 751. A fact is material when its existence or nonexistence may be essential to the plaintiffs cause of action under the applicable theory of recovery; a fact is material if it potentially insures or precludes recovery, affects a litigant’s ultimate success, or determines the outcome of the legal dispute.
 
 Id.
 
 Simply put, a “material” fact is one that would make a difference on the trial on the merits.
 
 Id.
 

 In this case, Dr. Mitchell’s cause of action is for wrongful seizure by execu-tory process. Executory process is an expedited
 
 in rem
 
 action.
 
 Hood Motor Co. v. Lawrence,
 
 320 So.2d 111, 112-13 (La.1975). Executory process is “used to effect the seizure and sale of property, without previous citation and judgment, to enforce a mortgage or privilege thereon evidenced by an authentic act importing a confession of judgment.” La. C.C.P. |7art. 2631.
 
 [3]
 
 Executory process is a “unique and harsh remedy requiring strict construction.”
 
 Moore v. Louisiana Bank & Trust Co.,
 
 528
 
 *1113
 
 So.2d 606, 609 (La.1988)(citing
 
 Myrtle Grove Packing Co. v. Mones,
 
 226 La. 287, 291, 76 So.2d 305, 306 (1954)).
 

 A creditor seeking to enforce a mortgage or privilege on property by executory process must file a petition praying for the seizure and sale of the property affected by the mortgage or privilege. La. C.C.P. art. 2634. To prove his right to use execu-tory process, a plaintiff-creditor must submit with its petition authentic evidence of three things: (1) the mortgage or privilege on the property sought to be seized and sold; (2) the amount of the indebtedness sought to be enforced; and (3) the plaintiff-creditor’s right to enforce the mortgage or privilege under the executory process. La. C.C.P. Art. 2637, Cmt. (a). Once the order has issued and the property has been seized, the defendant-debtor may contest the seizure only by taking a suspensive appeal or by instituting an injunction proceeding to arrest the seizure and sale. La. C.C.P. art. 2642.
 
 [4]
 

 In this ease, WMB filed a petition for executory process and attached thereto authentic evidence satisfying all three requirements for obtaining an order of seizure and sale: a copy of the note, mortgage agreement, and a certified copy of the assignment of the mortgage note to it. Given WMB satisfied all the authentic evidence requirements for executory process, the | strial court ordered the issuance of a writ of seizure, and the Property was seized. It is undisputed that Dr. Mitchell was served with the initial notice of seizure. Dr. Mitchell, however, contends that the sheriff also was required to serve her with the amended notice of seizure from which her property was seized and sold. In support of her argument that service of the amended notice of seizure was required, Dr. Mitchell cites La. C.C.P. art. 2721 as mandating the sheriff serve “any” notice of seizure upon the judgment debtor. Wells Fargo, on the other hand, cites
 
 Chase Manhattan Mortgage Corp. v. Lassiter,
 
 04-484 (La.App. 5 Cir. 11/30/04), 889 So.2d 1155, for the proposition that once a debtor is served with an initial notice of seizure no further notice of seizure is required to be served.
 

 Resolution of the issue of whether service of the amended notice of seizure was required turns on construction of several codal and statutory provisions. La. C.C.P. art. 2721 provides that the sheriff must serve upon the defendant “a written notice of the seizure of the property”. La. C.C.P. art. 2293(B) also provides that the sheriff shall serve “a notice of seizure.” The content requirements for the notice of seizure are enumerated in La. R.S. 13:3852(A), which provides that the notice of seizure shall include, “if applicable, the date of the first scheduled sale of the property.” La. R.S. 13:3852(A). A suggested form of notice is included in La. R.S. 13:3852(B), which provides in pertinent part: “This matter is scheduled for sheriffs sale on [the actual first scheduled date of sale] ... or any day thereafter as scheduled by the sheriff.”
 

 | ^Construing La. R.S. 13:3852 and La. C.C.P. Art. 2293(B) in
 
 pari materia,
 
 the court in
 
 Lassiter, supra,
 
 rejected a debt- or’s argument that she was entitled to a second notice of seizure when the first sale was delayed. In
 
 Lassiter, supra,
 
 the debt- or was personally served with a notice of seizure, which included the date of the first
 
 *1114
 
 scheduled sale of the property. That sale date was delayed due to the debtor’s bankruptcy filing. After the debtor’s bankruptcy was dismissed, the creditor rescheduled the sale without requesting that the debtor be served with another notice of seizure containing the new sale date. After the sheriffs sale occurred, the debtor filed a Motion to Annual Sale, contending that the sale of her property was not valid because she was not served with a second notice of seizure. Stated otherwise, she contended that the creditor “did not provide proper
 
 Mennonite
 
 notice to her of a second sale date.”
 
 Lassiter,
 
 04-484 at p. 4, 889 So.2d 1156.
 
 [5]
 

 Rejecting the debtor’s contention, the court in
 
 Lassiter, supra,
 
 reasoned that the debtor had defaulted under the terms of the mortgage and that the creditor had validly exercised its right to have the property seized and sold in accord with the executory process provisions, La. C.C.P. arts. 2631-2638. The court further reasoned that read together La. C.C.P. art. 2293(B) — which requires service of “a written notice of seizure of the property” — and La. R.S. 13:3852 — which requires the notice include “the date of the first scheduled sale of the property” — mandate |10that “upon seizure of their property, a defendant receive a written notice that informs them of the first scheduled sale date.”
 
 Lassiter,
 
 04-484 at p. 4, 889 So.2d 1157. The court still further reasoned that there was no Louisiana authority for requiring a creditor to provide a debtor with notice of a rescheduled judicial sale. Summarizing, the court in
 
 Lassiter
 
 held that when a sheriffs sale is delayed, the creditor is not required to serve the debtor with another notice of seizure. The court concluded that the Louisiana provisions for notice to a debtor in the event of seizure, which comport with the
 
 Mennonite
 
 due process requirements, mandate only notice of the original sale date. Under these provisions, the onus is placed on the debtor to monitor the executory proceeding for the rescheduled sales date.
 

 Dr. Mitchell contends that
 
 Lassi-ter
 
 is distinguishable because it involved the same creditor seeking to reschedule the sale of the property under the same executory proceeding. In contrast, she contends that the Supplemental and Amending Petition filed in the executory proceeding involved a new creditor— Wells Fargo — and resulted in the issuance of a new writ of seizure. She contends that “[sjervice of notice of the new writ was mandatory under Article 2721, and could not be waived by service of notice of a prior writ by a former creditor [WMB] who no longer had the right to bring ex-ecutory proceedings against Dr. Mitchell.” We disagree.
 

 The situation in this case is analogous to the situation presented in the
 
 Lassiter
 
 case. Dr. Mitchell defaulted on her loan agreement and WMB established its right to proceed by executory process to seize and sell the Property. Dr. | ^Mitchell was served with a notice of seizure. Thereafter, she entered into the repayment agreement. The repayment agreement is analogous to the bankruptcy filing in
 
 Lassiter.
 
 Both postponed a scheduled sale date. The repayment agreement expressly provided that the executory proceeding would be placed on hold for the time the repayment agreement was in place. The agree
 
 *1115
 
 ment also provided for the resumption of the foreclosure in the event of a default in its terms, which Dr. Mitchell acknowledged occurred. When the executory proceeding was resumed, there was no obligation to serve Dr. Mitchell with another notice of seizure.
 

 Our holding is buttressed by the inclusion in the initial notice of seizure that Dr. Mitchell received of language warning her that she may not be given service of any resetting of the sale date and that she had the duty to monitor the executory proceeding. Particularly, the notice she received provided that if the Property did not sell or if the sale was rescheduled to a later date the mortgagor is “not guaranteed notice of the new sale date” and that it is the mortgagor’s “responsibility to monitor the progress of the case.” We thus find the trial court correctly concluded that there was no requirement that Dr. Mitchell be served with the amended notice of seizure.
 

 Dr. Mitchell further contends that Wells Fargo, not WMB, was required to file the Supplemental and Amending Petition because it was the party with whom she entered the repayment agreement and the apparent holder of the mortgage note when the supplemental petition was filed. Continuing, she argues that Wells Fargo | i2was required to establish by authentic evidence its right to enforce the mortgage note.
 
 See American Security Bank of Ville Platte v. Deville,
 
 368 So.2d 167 (La.App. 3rd Cir.1979). This contention would be correct if, as Dr. Mitchell suggests, WMB’s initial executory proceeding had been dismissed and Wells Fargo had commenced anew an executory proceeding after she defaulted on the repayment plan. However, the executory proceeding was neither dismissed nor commenced anew.
 

 WMB was the proper party plaintiff to complete the executory proceeding it validly commenced for three reasons. First, the Property remained seized from the time WMB commenced the proceeding in December 2006 until the sheriffs sale to the third party purchaser in January 2008. Second, Dr. Mitchell never cured the initial default on the mortgage note that triggered the commencement of the executory proceeding. Finally, the repayment agreement expressly provided that in the event Dr. Mitchell defaulted on its terms the pending foreclosure action would be resumed.
 

 Dr. Mitchell further contends, as she did at the trial court level, that it was error for the trial court to allow Wells Fargo to introduce into evidence at the summary judgment hearing the entire record of the underlying executory proceeding. She contends that Wells Fargo failed to identify any specific portions of that record as supporting its motion for summary judgment and that she had no opportunity to review the record or respond. Wells Fargo counters that because Dr. Mitchell’s suit is based upon the facts of the underlying executory proceeding, |iait logically follows that the inclusion of the record of that proceeding in this case was proper. Wells Fargo points out that Dr. Mitchell’s counsel was required to make a good faith examination of the executory proceeding record before bringing this suit. Wells Fargo further points out that it is customary to introduce the record of a related prior proceeding when, as in this case, that proceeding is at the heart of the issue in the case at hand. We find no error in the trial court’s evidentiary rulings that the record of the prior proceeding is a public record and that Wells Fargo could introduce that record in support of its motion for summary judgment.
 

 Dr. Mitchell still further contends, as she did at the trial court level, that summary judgment was prematurely granted because no discovery had taken place at the time summary judgment was granted. In support, she cites La. C.C.P.
 
 *1116
 
 art. 966 C(l), which provides that summary judgment should only be considered “[a]fter adequate discovery.” Wells Fargo counters that discovery is not a prerequisite to granting summary judgment. Wells Fargo emphasizes Dr. Mitchell’s failure to conduct any discovery despite the passage of more than nine months between the filing of the suit and the summary judgment hearing. Wells Fargo contends that discovery is irrelevant to establish compliance with the law regarding execu-tory process and that a delay for conducting discovery in this case therefore is unwarranted.
 

 The jurisprudence holds that “while parties must be given fair opportunity to carry out discovery and present their claim, there is no absolute right to delay action on motion for summary judgment until discovery is complete.”
 
 Thomas v.
 
 North
 
 40 Land Development, Inc.,
 
 04-0610, p. 31 (La.App. 4 Cir. 1/26/05), 894 So.2d 1160, 1179 (quoting
 
 Butzman v. Louisiana Power and Light Co.,
 
 96-2073, p. 4 (La.App. 4 Cir. 4/30/97), 694 So.2d 514, 517). As the Louisiana Supreme Court has held, “[t]he only requirement is that the parties be given a fair opportunity to present their claim. Unless plaintiff shows a probable injustice a suit should not be delayed pending discovery when it appears at an early stage that there is no genuine issue of fact.”
 
 Simoneaux v. E.I. du Pont de Nemours and Co.,
 
 483 So.2d 908, 912-13 (La.1986). Applying these principles, we find the trial court did not prematurely grant summary judgment.
 

 DECREE
 

 For the foregoing reasons, the judgment of the trial court is affirmed.
 

 AFFIRMED.
 

 [1]
 

 . The plaintiff is a veterinarian and a life-long resident of New Orleans.
 

 [2]
 

 . Since Dr. Mitchell has not assigned as error the trial court's denial of her motion for new trial, the issue of whether WMB was properly dismissed is not before us on appeal. For this reason, the exception of no cause of action WMB filed in this court is denied as moot. (In her brief, Dr. Mitchell expressly noted that she takes no position on WMB's exception.)
 

 [3]
 

 . An authentic act is one executed before a notary public in the presence of two witnesses. La. C.C.P. art. 2234. An act evidencing a mortgage or privilege imports a confession of judgment when the obligor acknowledges the obligation secured by the act and confesses judgment thereon, whether before or after maturity. La. C.C.P. art. 2632.
 

 [4]
 

 . As noted elsewhere, Dr. Mitchell filed an injunction seeking to arrest the seizure and sale of the Property, which was dismissed. Based on that prior request for injunctive relief, the trial court in this case granted in part Wells Fargo's exception of res judicata. Although Dr. Mitchell assigns as error the trial court's ruling on that exception, we find it unnecessary to reach that issue since we find no substantive defects in the executory proceeding.
 

 [5]
 

 . The court in
 
 Mennonite Board of Missions v. Adams,
 
 462 U.S. 791, 103 S.Ct. 2706, 77 L.Ed.2d 180 (1983), recognized that "prior to an action which will affect an interest in life, liberty, or property protected by the Due Process Clause of the Fourteenth Amendment, a State must provide 'notice reasonably calculated, under all circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.' ” 462 U.S. at 795, 103 S.Ct. 2706.