THIBODEAUX, Chief Judge.
 

 hln 2009, the Bank of New York Mellon (Mellon), sued husband and wife, Whitney Blaine Smith, deceased, and Pamela Deann LaCour Smith (Smith), to enforce a promissory note (Note) and act of mortgage (Mortgage) that the Smiths had signed in 1999. Smith reconvened against Mellon for wrongful seizure and conversion of property under state law and for due process violations under federal law. She also brought third party demands against Mellon’s predecessor, JP Morgan Chase Bank (Chase), and the law firm which represented Chase, Dean Morris, L.L.P. (Dean Morris).
 

 Smith filed an Exception of No Right of Action against Mellon. Chase and Mellon asserted Exceptions of No Cause of Action and Improper Cumulation. Chase filed a Motion to Strike Jury Demand, and Dean Morris filed an Exception of Prescription. In its May 2010 judgment, the trial court denied Smith’s exception and granted all exceptions and motions filed by Mellon, Chase, and Dean Morris. The judgment dismissed most of Smith’s claims and left for trial Mellon’s suit against Smith to enforce the Note and Mortgage. Smith appeals the judgment of the trial court. For the following reasons, we affirm in part, and reverse in part, the judgment.
 

 I.
 

 ISSUES
 

 We must decide:
 

 
 *1038
 
 (1) whether the trial court erred in denying Smith’s Exception of No Right of Action against Mellon;
 

 (2) whether the trial court erred in granting Chase’s and Mellon’s Exceptions of No Cause of Action;
 

 (3) whether the trial court erred in granting Chase’s and Mellon’s Exceptions of Improper Cumulation;
 

 |2(4) whether the trial court erred in granting Chase’s Motion to Strike Jury Demand of Smith; and,
 

 (5) whether the trial court manifestly erred in granting Dean Morris’ Exception of Prescription.
 

 II.
 

 FACTS AND PROCEDURAL HISTORY
 

 The current claims of Mellon and Smith had their genesis in an earlier suit, brought by Chase in 2004 and dismissed without prejudice , in 2009. Where clarity requires, we will refer to the 2004 Chase suit as Suit # 1, and we will refer to the current suit, the 2009 Mellon suit, as Suit #2.
 

 Suit # 1
 

 In June of 2004, the Smiths defaulted on their 1999 mortgage loan with Saxon Mortgage Services, Inc. (Saxon). The loan was secured by the Smiths’ home in Grant Parish. Two months after missing the June payment, Whitney Smith died in an automobile accident. Pamela Smith alleged that there was life insurance on the loan that should have paid it off upon Whitney’s death, and she has a suit in federal court against the insurance company.
 

 In November of 2004, Chase, as trustee for Saxon, sued the Smiths by executory process, asked for the appointment of an attorney curator to represent Whitney, and caused the Sheriff of Grant Parish to deliver a notice of seizure to Pamela Smith on December 8, 2004. The seizure under executory process was constructive, allowing the debtor thirty days to defend against the actual seizure of the collateral-ized property. Smith, fearing that she would be evicted from her home over the holidays, moved her children out of the house and filed for an injunction to stop the seizure by executory process.
 

 |RAt the hearing on the preliminary injunction in April of 2005, Judge Krake considered Smith’s petition and testimony, along with the oppositions and affidavits of Chase and Saxon, and found in favor of Smith. The executory process employed by Chase was defective and not in authentic form due to Chase’s failure to attach the original Note or certified copies of the Note and Mortgage to its petition in 2004. The face of the Note, which was apparently lost in 2004, bears a stamp stating “Paid and Canceled by JP Morgan Chase,” dated November 8, 2004. The stamp is unsigned and has an X over it. The May 2005 judgment of Judge Krake granted Smith’s injunction and enjoined any sale of her home by executory process, ordered Chase to convert the executory proceeding to an ordinary proceeding, and preserved Smith’s claims of wrongful seizure under state and federal law. Chase did not appeal this judgment and three weeks later converted its suit to a foreclosure by ordinary proceeding.
 

 In September of 2005, Smith reconvened against Chase and filed a third party demand against Saxon, asserting wrongful seizure under Louisiana law, conversion, and due process violations under federal law, 42 U.S.C. 1983. Under the third cause of action, Smith alleged that Chase, Saxon,
 
 and
 
 Dean Morris were solidarity liable, and were state actors for the purposes of 42 U.S.C. 1983, in that they had wrongfully used the executory process and “the powers and authorities of the State of Louisiana” to seize her home. She further
 
 *1039
 
 asserted that, while executory process is basically constitutional, it was employed in an unconstitutional manner by Chase, Saxon, and Dean Morris. In 2006, Chase, Saxon, and Dean Morris filed a motion to dismiss Smith’s claims for failure to serve.
 

 On November 2, 2006, Judge ad hoc Peyton Cunningham dismissed Smith’s claims pursuant to La.Code Civ.P. art. 1672(C), which mandates a dismissal 14without prejudice and allows the re-filing of suit.
 
 [1]
 
 The dismissal by Judge Cunningham came to this court on appeal, but before we rendered a decision, Smith reasserted her demands against Chase and Saxon for wrongful seizure. Chase and Saxon filed four exceptions and a motion to strike the jury demand against Smith’s reasserted demands, which were apparently not heard until July of 2009.
 

 In May of 2008, finding no written waiver of service by Chase or Saxon of Smith’s 2005 incidental demands, and finding that her faxing of the demands was insufficient where service was required by the sheriff, we affirmed Judge Cunningham’s 2006 dismissal without prejudice. See
 
 JP Morgan Chase Bank v. Smith,
 
 07-1580 (La.App. 3 Cir. 5/21/08), 984 So.2d 209. We did not address Smith’s re-asserted demands or the exceptions to them, which were not within our purview or knowledge.
 

 At the July 2009 hearing on Chase’s and Saxon’s various exceptions to Smith’s reasserted demands, Judge ad hoc Ronald Lewellyan informed the parties that he was going to dismiss the entirety of Suit #1.
 

 On August 3, 2009, without ruling on the re-asserted demands or the exceptions, Judge Lewellyan issued a judgment dismissing Suit # 1, Chase’s suit against Smith, and Smith’s re-asserted demands against Chase and Saxon.
 

 Suit # 2
 

 On July 30, 2009, Mellon filed a suit against Smith to enforce the Note and Mortgage by ordinary proceeding.
 

 IfiOn September 17, 2009, Smith answered Mellon’s suit, asserting an exception of no right of action and a recon-ventional demand against Mellon, and asserting third party demands against Chase and Dean Morris. As in Suit # 1, Smith again asserted wrongful seizure under state law, conversion, and due process violations under 42 U.S.C. 1983.
 

 Mellon, Chase, and Dean Morris filed numerous exceptions to Smith’s reconven-tional and third party demands. The trial court granted all exceptions filed by Mellon, Chase, and Dean Morris, and it denied Smith’s exception of no right of action against Mellon.
 

 III.
 

 STANDARDS OF REVIEW
 

 Both peremptory exceptions of no right of action and no cause of action pose questions of law and are reviewed de novo.
 
 Washington Mut. Bank v. Monticello,
 
 07-1018 (La.App. 3 Cir. 2/6/08), 976 So.2d 251,
 
 writ denied,
 
 08-530 (La.4/25/08), 978 So.2d 369; see also
 
 Industrial Companies, Inc. v. Durbin,
 
 02-665 (La.1/28/03), 837 So.2d 1207. “[T]he trial court’s findings of fact on the issue of prescription are subject to the manifest error-clearly wrong standard of review.”
 
 London Towne Condo. Homeowner's Ass’n v. London Towne Co.,
 
 06-401, p. 4 (La.10/17/06), 939 So.2d 1227, 1231 (citation omitted).
 

 
 *1040
 
 IV.
 

 LAW AND DISCUSSION
 

 Denial of Smith’s Exception of No Right of Action against Mellon
 

 Smith contends that Mellon is not a holder in due course of the original promissory Note and, therefore, has no right of action to enforce the Note and Mortgage.
 

 IfiThe exception of no right of action is designed to test whether the plaintiff has a real and actual interest in the action. La.Code Civ.Proc. art. 927(5). The function of the exception of no right of action is to determine whether the plaintiff belongs to the class of persons to whom the law grants the cause of action asserted in the suit.
 

 Louisiana Paddlewheels v. Louisiana Riverboat Gaming Com’n,
 
 94-2015, p. 4 (La.11/30/94), 646 So.2d 885, 888.
 

 Here, the Note was payable to Saxon Mortgage. Smith asserts that it requmes an endorsement to transfer or assign the Note to Mellon, and that the Note is not so endorsed. She cites
 
 Hollis v. Norton,
 
 586 So.2d 656 (La.App. 5 Cir.1991), for the proposition that the burden is on the possessor of the note to prove its ownership, and that while the Note in this case indicated that it was negotiated (transferred) from Saxon to Chase, it did not have an endorsement from Chase to Mellon. Smith argues that Mellon has offered no competent proof that the Note was transferred to Mellon.
 

 Mellon’s suit against Smith attached a copy of the Note and the Mortgage. The Note itself does not provide evidence of the transfer from Chase to Mellon.
 

 Citing
 
 FGB Realty Advisors, Inc. v. Riedlinger,
 
 95-2276 (La.App. 4 Cir. 4/3/96), 671 So.2d 560,
 
 writ denied,
 
 96-1299 (La.7/1/96), 676 So.2d 101, Smith argues that an exception of no “right” of action is properly decided after a hearing at which evidence may be introduced.
 

 Mellon’s opposition to Smith’s exception attached six exhibits:
 

 1) The Note
 

 2) Trust Agreement between Saxon and Chase Bank of Texas — unsigned
 

 3) Standard Terms to Trust Agreement (regarding the mortgage loan pool and the Master Servicer) — unsigned
 

 |74) 11/10/01 Merger of Chase Bank of Texas with JP Morgan Chase (Chase)
 

 5) Affidavit of Saxon by its Assistant Vice President, John Cottrell, identifying the Note and Mortgage of Smith as having been transferred into the Trust on 11/1/99; attesting that Saxon had always remained the Master Servicer of the loans in the Trust; attesting to the 10/1/06 resignation of Chase as Trustee and the substitution of Mellon as Trustee, “with rights and obligations belonging thereto,” including the right to enforce the Note and Mortgage in the Saxon Trust; identifying the Trust Agreement and Standard Terms To Trust Agreement as those attached by Mellon; and attesting to personal knowledge of the above.
 

 6) Affidavit of Mellon by John Cottrell as Attorney in Fact for Mellon, again identifying the above documents; and attesting that Mellon and Chase are separate and distinct entities and that neither is an affiliate or agent for the other; and attesting that Mellon did not participate in Chase’s executory proceeding against Smith.
 

 In
 
 Hollis,
 
 the possessor of a promissory note sought to confirm a preliminary default judgment but failed to prove a valid transfer of the note to himself from the original payees named on the note. Under La. Code Civ.P. art. 1702, an affidavit of correctness is sufficient to constitute proof
 
 *1041
 
 of the demand and to establish a prima facie case for a default judgment on a promissory note, but the
 
 Hollis
 
 court found that the plaintiffs affidavit failed to mention the owners on the face of the note or a pledge alleged in the petition. Here, given the extensive detail regarding the chain of ownership of the right to enforce the loan documents, the affidavits satisfy Article 1702, rendering
 
 Hollis
 
 distinguishable.
 

 In
 
 FGB Realty Advisors, Inc.,
 
 the possessor of a promissory note and securing mortgage, referred to as FGB, sought to enforce the note and mortgage against the defendants. As in this case, FGB sought payment for all outstanding accelerated indebtedness, with interest, and for amounts advanced by FGB for taxes, insurance,, assessments, maintenance, attorney fees and costs of the proceedings. The trial court granted the defendant’s exception of no right of action, finding that the |snote contained no endorsement to FGB. The fourth circuit reversed, citing La.R.S. 10:3-301 of Title Ten on the enforcement of negotiable instruments, which provides:
 

 “Person entitled to enforce” an instrument means (i) the holder of the instrument, (ii) a nonholder in possession of the instrument who has the rights of a holder, or (iii) a person not in possession of the instrument who is entitled to enforce the instrument pursuant to R.S. 10:3-309 or 10:3-418(d). A person may be a person entitled to enforce the instrument even though the person is not the owner of the instrument or is in wrongful possession of the instrument.[
 
 2
 
 ]
 

 In finding a right of action on the part of FGB, the fourth circuit applied R.S. 10:3-301 retroactively (not at issue here), finding it procedural because it “relate[d] to the method of enforcing FGB’s substantive rights, and [did] not impair the [defendants’] substantive right to assert whatever defenses they may have to the validity,
 
 vel non
 
 of their obligation under the note.”
 
 FGB Realty Advisors, Inc.,
 
 671 So.2d at 564. Accordingly, the FGB case, while cited by Smith, actually supports the position of Mellon, where Mellon has shown that it is entitled to enforce the Note and Mortgage as trustee for Saxon. As in the FGB case, Smith’s right to assert her defenses on the Note is not impaired by denying her exception. We affirm the portion of the trial court’s judgment denying Smith’s exception of no right of action.
 

 Exceptions of No Cause of Action
 

 The trial court granted Chase’s and Mellon’s Exceptions of No Cause of Action on Smith’s claim of due process violations. Based upon Smith’s allegations and factual assertions in her pleadings, we reverse on this issue.
 

 The function of the peremptory exception of no cause of action is to question whether the law extends a remedy to anyone under the factual allegations of the lapetition.... No evidence may be introduced ... and ... well-pleaded facts in the petition must be accepted as true.
 

 Fink v. Bryant,
 
 01-987, pp. 3-4 (La.11/28/01), 801 So.2d 346, 348-49 (citations omitted).
 

 Smith alleged that Chase and its attorney, the law firm of Dean Morris, L.L.P., were “state actors” for purposes of 42 U.S.C. 1983 claims “because their use of the powers and authorities of the State of Louisiana to improperly seize” her home via executory process deprived her of a “pre-deprivation hearing.” She further al
 
 *1042
 
 leged in her amended pleading that she did not have equal bargaining power and did not knowingly waive her due process rights in the confession of judgment used in the executory process. Smith also asserted that Chase and Dean Morris were informed in advance that they could not use executory process, but they “proceeded to utilize a process that deprived respondent of her constitutional right to a pre-seizure hearing.”
 

 A plaintiff has a cause of action under section 1983 if he alleges that he has been deprived of a right secured by the Constitution by one acting under color of state law. In
 
 Lugar v. Edmondson Oil Co.,
 
 457 U.S. 922, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982), the Supreme Court held that private parties invoking a state attachment statute may be held liable under section 1983 if their actions are “fairly attributable to the state.”
 
 Id.
 
 at 936, 102 S.Ct. at 2753. A private party’s actions are fairly attributable to the state if the constitutional deprivation is “caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the state or by a person for whom the State is responsible” and “the party charged with the deprivation [is] ... a person who may fairly be said to be a state actor.”
 
 Id.
 
 A party may be considered a state actor if he “has acted with or has obtained significant aid from state officials,” or if his “conduct is otherwise chargeable to the State.”
 
 See id.
 
 at 923, 102 S.Ct. at 2754.
 

 Doyle v. Schultz,
 
 97 F.Supp.2d 763, 767 (W.D.La.2000) (alteration in original) (citations omitted) (footnote omitted);
 

 | inUnder
 
 Doyle,
 
 an attorney may be a state actor along with his client, the seizing creditor, if he employs the state to enforce or execute a state-provided procedure.
 
 See also Jordan v. Fox, Rothschild, O’Brien & Frankel,
 
 20 F.3d 1250 (3d Cir. 1994);
 
 and see Wyatt v. Cole,
 
 994 F.2d 1113 (5th Cir.1993). Louisiana’s executory process itself was held to be constitutional in
 
 Buckner v. Carmack,
 
 272 So.2d 326 (La.1973). However, even where the Louisiana procedure for issuing and executing a seizure is constitutional as written, misapplication of the due process protections provided in the statute can give rise to a section 1983 claim.
 
 See Doyle,
 
 97 F.Supp.2d 763. A private party who sets an attachment scheme in motion is considered a state actor if the plaintiff challenges the constitutionality of the procedure.
 
 See Id.
 
 Here, Smith asserts that executory process was used in a manner that violated her due process rights, but she also asserts that the “process” deprived her of her constitutional rights.
 

 Chase and its attorney, Dean Morris, filed a “Petition to Enforce Security Interest by Executory Process.”
 

 Executory proceedings are those which are used to effect the seizure and sale of property,
 
 without previous citation and judgment,
 
 to enforce a mortgage or privilege thereon evidenced
 
 by an authentic act
 
 importing a confession of judgment, and in other cases allowed by law.
 

 La.Code Civ.P. art. 2631 (emphasis added).
 

 Its procedural bases are the debtor’s confession of judgment before a notary public and two witnesses;
 
 supporting authentic evidence;
 
 and a determination by a judge that the submissions are adequate for the seizure and sale of the encumbered property to satisfy the debt.
 

 [[Image here]]
 

 The judge must satisfy himself that the plaintiffs petition is supported by
 
 authentic evidence
 
 of (1) the instrument evidencing the mortgagor’s indebtedness [the Note]; (2) the Act of Mortgage or privilege containing a confession of judg
 
 *1043
 
 ment; and (B) any other instruments lnnecessary to complete proof of plaintiffs right to use executory process. LSA-C.C.P. Art. 2635.
 

 Buckner,
 
 272 So.2d at 329-80 (emphasis added).
 

 Hence, executory process allows seizure without previous citation and judgment and turns on the requirement of authentic evidence, meaning that the instruments of the mortgage loan must be originals or copies that are certified by the same notary before whom the instruments were initially executed. La.Code Civ.P. art. 2636. Ordinary process, on the other hand, does not require that the copies of the note and mortgage be authentic/certified, but it does require a previous citation and a judgment. La.Code Civ.P. art. 2644. In this case, the loan instruments were executed by the Smiths in 1999; the original Note was “lost” at the time of Chase’s petition in 2004, and Chase apparently did not find the original notary and have the copies of the Note and Mortgage certified as true and correct. Notwithstanding, Chase asserted in that petition, through its counsel, Dean Morris, that all evidence attached
 
 was
 
 authentic. This was not true, but the lack of authentic evidence was apparently not noted by the state court judge who approved the seizure.
 

 Subsequently, as Smith asserts, and the record confirms, Smith obtained a judgment of injunction to stop the seizure by executory process because Chase’s evidence was defective. The May 2005 judgment of preliminary injunction ordered Chase to convert its action to an ordinary proceeding and specifically preserved Smith’s actions for wrongful seizure under state law and for section 1983 violations under federal law.
 

 Smith further asserts that she was not given proper notice under the Mortgage itself. More specifically, Chase asserted in its petition for executory process that,
 
 pursuant to the requirements of the Mortgage,
 
 prior to acceleration of the payments,
 
 it had mailed the Smiths notice of:
 
 (1) the breach; (2) the action | ^required to cure the breach; (3) the date by which the breach must be cured; (4) the acceleration of sums due if they failed to cure; (5) their rights to defend and reinstate after acceleration; and, (6) Chase’s right to declare all sums immediately due and to obtain seizure and sale of the property without further demand if the breach was not cured. Smith, however, asserts in her incidental demands that — in spite of Chase’s assertion in its petition — it did not notify the Smiths of the acceleration of payments in compliance with paragraph twenty-one of the Mortgage. The first line in paragraph twenty-one states, “Lender shall give notice to Borrower prior to acceleration following Borrower’s breach of any covenant or agreement.” The next few sentences mandate that the notice shall address the six items of acceleration listed above. Item six states that the lender may require acceleration of all sums due without “further” demand, but this does not negate the requirement of notice in the first line of paragraph twenty-one.
 

 The last line in paragraph twenty-one of the Mortgage states, “Borrower hereby confesses judgment in favor of Lender ... in the full amount of all sums secured.” Pursuant to La.Code Civ.P. art. 2632, “An act evidencing a mortgage or privilege imports a confession of judgment when the obligor therein acknowledges the obligation secured thereby, whether then existing-or to arise thereafter, and confesses judgment thereon if the obligation is not paid at maturity.” We note that the confession of judgment in Smith’s Mortgage does not contain the phrase “if the obligation is not paid at maturity.” Smith asserted by supplemental demand that the confession of judgment, which is specifically allowed in Louisiana’s executory pro
 
 *1044
 
 cess, was not knowingly and voluntarily made and that there was unequal bargaining power in Chase’s favor. In
 
 Buckner,
 
 where the court denied the defendant’s claims that Louisiana’s executory process regime was unconstitutional, the court noted that the defendants made “no contention of unequal bargaining power |1Ror overreaching by the creditor. Nor do we find from an examination of the instrument any evidence of abuse.”
 
 Buckner,
 
 272 So.2d at 330.
 

 Conversely, here, we have an assertion of unconstitutionality of the executory process regime itself; an assertion of unequal bargaining power in the confession of judgment; evidence of possible abuse in the loan instruments, i.e., a Note stamped “Paid and Canceled by JP Morgan Chase” on November 8, 2004, two days before Chase filed suit against Smith; a Note and Mortgage attached to Chase’s petition for executory process that were not in authentic form; a judge’s approval of the evidence; and, we have a judgment of injunction against Chase for lack of authentic evidence and an order to convert its action to ordinary process, which Chase did three weeks later,
 
 without appealing the order to convert,
 
 all of which Smith has asserted in her incidental demands. Smith specifically asserted that Chase and Dean Morris, though warned not to do so, “proceeded to utilize a process that deprived” her of her constitutional right to a pre-seizure hearing, caused a constructive seizure of her home by the Sheriff, and caused her to move her family out of the home. All of this occurred a few months after Smith’s husband died and shortly before Christmas.
 

 Chase and Mellon argue that Louisiana’s executory process has built-in safeguards precluding the due process violations alleged, because it requires that a judge examine the documents for authenticity, contrary to the writ of fieri facias used in
 
 Doyle,
 
 which only requires the approval of seizure by the clerk of court. Notwithstanding such safeguards, however, we have a court-ordered judgment in Smith’s case granting an injunction to stop a judge-approved, but flawed, seizure due to a lack of authentic evidence.
 
 [3]
 
 Chase and Mellon assert that the injunction did not find “wrongful” seizure, but the injunction occurred
 
 after
 
 a hearing with testimony 1 l4and evidence presented by Smith and Chase. It did stop the seizure, and it did preserve Smith’s claims for wrongful seizure under state law and under 42 U.S.C. 1983.
 

 Chase did not appeal the judgment of injunction, but almost immediately converted its proceeding, thereby voluntarily releasing the seizure. “This does not prove, but it does strongly indicate ... that the seizing creditor anticipated that the judge would rule that the seizure of the defendants’ property was illegal.”
 
 General Elec. Credit Corp. v. Smigura,
 
 371 So.2d 1363, 1365 (La.App. 3 Cir.),
 
 writ denied,
 
 375 So.2d 942 (La.1979) (quoting
 
 First National Bank Building Co., Ltd. v. Dickson & Denny,
 
 202 La. 970, 979, 13 So.2d 283, 286 (La.1943)).
 
 [4]
 

 In summary, Chase and its attorney, Dean Morris, caused a seizure by the sheriff, and there is a final judgment indicating that the seizure was unlawful. Smith has asserted damages as a result of that seizure. Under
 
 Doyle,
 
 we are not convinced
 
 *1045
 
 that the use of a state court judge by Chase and Dean Morris, instead of the clerk of court, to effect an unlawful seizure, removes the judge from the sphere of
 
 a person for whom the State is responsible
 
 or that it removes Chase and Dean Morris from the sphere of private parties whose actions in invoking a statute are
 
 fairly attributable to the state.
 
 Smith asserts that Chase and Dean Morris are state actors under section 1983, along with specific supporting facts. We are not deciding the merits. We find that Smith has asserted sufficient facts to state a cause of action against Chase and Dean Morris, and against Mellon, as successor to Chase, for 42 U.S.C. 1983 violations of due process in causing the constructive seizure through executory process.
 

 1 ^Mellon points out that Smith admits that Mellon was not actually involved in the seizure in 2004. We find this of no moment. While it is true that Mellon did not participate in the 2004 seizure, Mellon’s affidavit stated that Mellon obtained the rights
 
 and
 
 obligations of Chase, which would render them solidary obligors on the first foreclosure proceeding by Chase. Smith has asserted solidary liability between Chase and Mellon. This, with all other facts asserted by Smith, is sufficient for purposes of stating a cause of action.
 

 Additionally, Mellon has admitted in referenced pleadings that if Smith can prove her case, she “may have a claim in tort for wrongful seizure” under state law. Smith’s claims for wrongful seizure under state law are against Chase and Mellon only. Under La.Civ.Code art. 2315, “[d]amages for wrongful seizure are allowed after an illegal seizure. This award can include damages in compensation for embarrassment, humiliation, mental anguish and worry.”
 
 Dixie Sav. and Loan Ass’n v.
 
 Pitre, 99-154, p. 17 (La.App. 5 Cir. 7/27/99), 751 So.2d 911, 921,
 
 writ denied,
 
 99-2867 (La.12/10/99), 751 So.2d 855.
 
 [5]
 

 The trial court’s judgment is ambiguous, dismissing Smith’s “tort claim” against Mellon, but dismissing Smith’s “tort claim of wrongful seizure under 42 U.S.C. 1983” against Chase. Smith filed three causes of action in tort: wrongful seizure under state law, conversion, and the federal 1983 claim. The section 1983 claim has regularly been referred to in this case as the “tort” claim because of its one-year prescriptive period. All parties in this appeal addressed only the section 1983 claim. We, therefore, find that the judgment of the trial court granted only the | ^exceptions of no cause of action on the 42 U.S.C. 1983 claims. Where Mellon has argued that Smith has “no” cause of action against it, and the trial court has granted Mellon’s exception, in the interest of judicial economy, we specifically find that Smith has also stated a cause of action for wrongful seizure in tort under Louisiana law.
 

 Mellon argues that Smith improperly alleged Mellon to be the agent or alter ego of Chase. This case is complicated due to the chain of rights attached to the loan, the two suits against Smith, Smith’s four sets of incidental and amending demands, and four judgments of dismissal. We find that, regardless of Smith’s assertion that Mellon was the agent or alter ego of Chase, she correctly asserted that Mellon was the suc
 
 *1046
 
 cessor to Chase, and she asserted facts sufficient to state a cause of action for wrongful seizure and solidary liability under Louisiana law.
 

 Mellon makes much of the fact that the initial seizure of Smith’s home was constructive only. We find this of no moment under the facts of this case. Chase had Smith served with a notice of seizure that caused her to move her family. In
 
 Smigura,
 
 371 So.2d at 1365, we stated:
 

 [A]fter the seizure was held to be wrongful in the hearing on the preliminary injunction and on the reconventional demand, General Electric voluntarily abandoned its executory proceeding, thereby releasing the seizure and permitting the return of the mobile home to Smigura.... Clearly, General Electric could not avoid damages for its tortious conversion by returning the seized property.
 

 Here, Smith did not get her order of injunction until May of 2005, after being served by the Sheriff with a notice of seizure on December 8, 2004. While the seizure was constructive only, but for the seizure notice, she would not have moved from her home or endured fear, anxiety, inconvenience, worry, and loss of use of her property. In
 
 Smigura,
 
 we stated the reason for damages in such cases: “It would be grossly unfair to allow [the plaintiff] to force [the defendant] to move from his homeland then, after five months, say to him in effect[,] We are sorry we seized your home by mistake. You can return now.’ ”
 
 Id.
 
 at 1366.
 

 “[W]here property has been wrongfully seized through judicial process, damages for mental anguish and inconvenience due to the loss of use of the property are recoverable.”
 
 Quealy v. Paine, Webber, Jackson & Curtis, Inc.,
 
 475 So.2d 756, 762 (La.1985) (citations omitted).
 

 Exceptions of Improper Cumulation of Actions
 

 Mellon and Chase brought exceptions of improper cumulation of actions arguing that the suit by Chase was an executory proceeding to enforce a mortgage while the suit by Mellon is an ordinary proceeding to enforce a note, and that neither the actions nor the parties to “these two wholly separate proceedings” are the same. We find these arguments without merit. As a threshold matter, both suits against Smith were brought to enforce both instruments of a single mortgage loan, the Note and the Mortgage, executed by the Smiths in favor of Saxon, the mortgagee in 1999. The Note is secured by the Mortgage and paraphed “Ne Varietur” for identification with the Act of Mortgage of the same date. The immovable property alleged to have been wrongfully seized is the collateral on the Mortgage.
 

 Chase converted its suit via ex-ecutory process to an ordinary proceeding in 2006, within weeks of the order by the court granting the injunction against the seizure by executory process. Both suits and all issues arise from the execution of the Note and Mortgage, the alleged default, and the alleged wrongful seizure. Mellon is the admitted successor to Chase and is claiming a right to enforce the same Note that bears a transfer to Chase Bank of Texas and a “paid and canceled” stamp by JP Morgan Chase.
 

 In Louisiana each party’s demand for the enforcement of a legal right against each defendant is | isregarded as a separate action which may be cumulated in a single suit, providing (a) there is a community of interest, (b) each of the actions is within the jurisdiction of the court and at the proper venue, and (c) all actions are mutually consistent and employ the same form of procedure.
 
 *1047
 
 LSA-CCP Arts. 421, 461, 46B. Additionally, incidental actions (reconvention, intervention, and third-party demand) may be instituted within a principal suit. Arts. 1031,1032.
 

 Texas Gas Transmission Corp. v. Gagnard,
 
 223 So.2d 233, 237 (La.App. 3 Cir. 1969).
 

 The test in determining whether the parties have a community of interest is whether the cumulated causes of action arise out of the same facts or whether they present the same factual or legal issues. Essentially, community of interest is present between different actions or parties, where enough factual overlap is present between the cases to make it commonsensical to litigate them together.
 

 Broussard v. Hilcorp Energy Co.,
 
 08-233, p. 10 (La.App. 3 Cir. 12/10/08), 998 So.2d 946, 953,
 
 aff'd and remanded on other grounds,
 
 09-449 (La.10/20/09), 24 So.3d 813 (quoting
 
 Albarado v. Union Pacific Railroad Co.,
 
 00-2540, p. 11 (La.App. 4 Cir. 4/25/01), 787 So.2d 431, 438) (citations omitted).
 

 The criteria of La.Code Civ.P. art. 463 are met: “Two or more parties may be joined in the same suit, either as plaintiffs or as defendants, if: (1) There is a community of interest between the parties joined; (2) Each of the actions cumulated is within the jurisdiction of the court and is brought in the proper venue; and (3) All of the actions cumulated are mutually consistent and employ the same form of procedure.” Likewise, under La.Code Civ.P. art. 462, multiple actions are allowed against one defendant using the same criteria as those of Article 463.
 

 Chase and Mellon further argue that Smith’s tort claims for the wrongful seizure had nothing to do with Mellon’s suit to enforce the promissory Note, that Mellon did not participate in the 2004 seizure and has no liability for it. As stated, Mellon is the successor to Chase as trustee for the Saxon loans and seeks to enforce the same mortgage loan instruments that Chase received from Saxon. To prove its | ¶ flright of action, Mellon presented an affidavit attesting to the 2006 resignation of Chase and the substitution of Mellon as trustee, “with rights and obligations belonging thereto.” Mellon’s proof of its right to enforce the Note and Mortgage as successor to Chase show that it also inherited the obligations of Chase with regard to the Note and Mortgage, indicating soli-dary liability between Chase and Mellon for the first seizure.
 

 When this case is ultimately tried, if it is determined that the loan was insured and should have been paid off, or that Smith suffered any damages due to wrongful actions against her by Chase or Mellon, including the constructive seizure of her property, someone will have to release and cancel the Note and Mortgage. It is not clear who has actual possession of the Note. Further, because Mellon is suing Smith for property maintenance fees, property taxes, insurance premiums, expenses, interest and attorney fees, Mellon is expending funds. Therefore, if Chase is found liable for damages for wrongful seizure, Mellon will likely proceed against Chase to recover its losses on the property. There is clearly a community of interest between Mellon and Chase. Additionally, Mellon accepted the trusteeship of a Note from Chase that Chase had at one time marked paid and canceled. Mellon and Chase are inextricably linked at this point in the litigation.
 

 Finally, under La.Code Civ.P. art. 464, if cumulation had been improper, the trial court should have severed, not dismissed, Smith’s claims. The trial court’s granting of the exception of improper cu-mulation of actions is hereby reversed.
 

 
 *1048
 

 Motion to Strike Smith’s Jury Demand
 

 The trial court granted the motion to strike Smith’s jury demand. Mellon argued that its suit is on a promissory note and that, pursuant to La.Code Civ.P. art. 1732(2), a jury trial is unavailable in a “suit on an unconditional promise to pay a Rnspecific sum of money.” Mellon further argues that under La.Code Civ.P. art. 1731, if the principal demand is not triable to a jury, neither is the incidental demand. Mellon admits that there is an exception under La.Code Civ.P. art. 1731(C), which provides: “If the compulsory reeonven-tional demand is triable by a jury, but the principal demand is not, the compulsory reconventional demand may be tried by a jury.” Mellon argues that Smith’s demands against it are not compulsory, and that Mellon was not even around when the seizure under executory process occurred in 2004. We have already addressed Mellon’s suecessorship to the rights and obligations of Chase.
 

 Smith argues that the claims against it are not based upon an unconditional obligation to pay a specific sum of money, and that La.Code Civ.P. art. 1732 is not applicable. We agree. Mellon’s suit asserts that it is owed:
 

 (a) principal of $63,112.75 with interest thereon at 10.875% per annum from July 01, 2004 until paid; (b) all expenses incurred in enforcing the note and mortgage including reasonable attorney’s fees not to exceed 25% of the sums due; (c) if/as applicable, such other additional amounts incurred or advanced for taxes, insurance premiums, special assessments, repairs to and/or maintenance ... and other amounts provided by the mortgage and applicable law ... prior attorney fees and expenses, abstract and title charges, NSF charges, attorney fees and expenses, and other charges which plaintiff is permitted to prove by affidavit ... and (d) all law charges, costs, fees and expenses including sheriffs commission.
 

 Similar demands were made in Chase’s Suit # 1, although the principal balance sought was $63,312.75. Both suits contain a legal description of Smith’s property and attach a copy of the Note and the Mortgage. Both suits demand an undisclosed or non-specific amount of interest and other charges. Neither suit, therefore, was on a simple unconditional obligation to pay a specific sum of money, such as an unsecured promissory note or a secured chattel mortgage where the interest |atis added to the front of the loan and where the face of the note shows the exact amount due, inclusive of principal and interest.
 

 Under the Note, Smith’s payments were $612.88 per month. Smith’s 1999 Note was for $65,000.00 and had a maturity of 2029, evidencing a thirty-year (360-month) mortgage. Payments of $612.88 for 360 months equal a total indebtedness of roughly $220,636.80, but the Note shows only the $65,000.00 principal amount. Also, the Note provided that the monthly payments of $612.88 are applied to interest first and that the interest is calculated on the unpaid principal balance. This indicates that the interest is computed on a per diem basis when the payment is received and applied. Depending upon when the payment is posted, the interest portion held out of the payment goes up and down, as does the portion remaining to be applied to the principal balance.
 
 [6]
 
 This fluc
 
 *1049
 
 tuation renders the interest portion of the loan unknowable. Hence, Smith’s loan is not an unconditional promise to pay a specific sum of money that precludes a jury trial under La.Code Civ.P. art. 1732. The main demand to enforce the Note and Mortgage is triable by jury, rendering Smith’s reconvention against Mellon, and her third party demands against Chase and Dean Morris, also triable by jury pursuant to La.Code Civ.P. art. 1731(B).
 
 [7]
 

 We further find that Smith’s reconven-tional demand was a compulsory reconven-tional demand under La.Code Civ.P. art. 1061(B), and a jury trial is available pursuant to La.Code Civ.P. art. 1731(C) as well. Except in divorce cases, “[t]he defendant in the principal action ...
 
 shall
 
 assert in a reconventional demand
 
 \22all causes of action that he may have
 
 against the plaintiff that arise out of the transaction or occurrence that is the subject matter of the principal action.” La.Code Civ.P. art. 1061(B) (emphasis added). A defendant, therefore, must assert a reconventional demand, rendering it compulsory, if it arises out of the transaction or occurrence of the principal demand by the plaintiff, instead of bringing a separate action against the plaintiff. La.Code Civ.P. art. 1061(B);
 
 Hy-Octane Inv., Ltd v. G & B Oil Products, Inc.,
 
 97-28 (La.App. 3 Cir. 10/29/97), 702 So.2d 1057.
 
 [8]
 

 Jurisprudence specifically indicates that jury trials are allowed in wrongful seizure cases. In
 
 First Nat. Bank of Commerce, New Orleans v. Miller,
 
 328 So.2d 383 (La.App. 4 Cir.1976), the defendant, who brought an action seeking to annul the prior executory proceeding and seeking damages in excess of $100,000.00 for illegal seizure and sale of his automobile, and for fraud in obtaining executory process, was entitled to a jury trial. The court found that suits for damages and for fraud were subject to ordinary proceedings, and none of the limitations upon jury trials were applicable. The court articulated, “While it is apparent that the initial proceeding that was filed by the bank against Miller was a petition for executory process, that phase of the litigation has long since passed out of the picture.... the denial of the right to a jury trial on the assigned basis is so clearly wrong that it admits of little discussion.”
 
 Id.
 
 at 385.
 
 See also Levine v. First Nat. Bank of Commerce,
 
 06-394 (La.12/15/06), 948 So.2d 1051 (jury trial was held in wrongful seizure action on immovable property).
 

 In
 
 Herzog’s Automotive Parts, Inc. v. Baronne Auto Supply, Inc.,
 
 94-213, p. 2 (La.App. 4 Cir. 2/9/94), 632 So.2d 806, 807, the fourth circuit reversed the trial | ^court’s denial of a jury trial because of the reconventional demand for wrongful seizure. There, the reconventional demand met the jurisdictional requirement amount but the main demand did not. After discussing the amendments to the res judicata doctrine and citing La.Code Civ.P. art. 1061, the court stated:
 

 Because of that requirement, called “compulsory reconvention,” the defendants in this case were absolutely required to bring their cause of action against Herzog in a reconventional demand ... rather than filing a separate action, which would have been allowed prior to January 1, 1991. Had they been allowed to file a separate action for damages for the alleged wrongful sei
 
 *1050
 
 zure, they would have been allowed to request a jury trial because their demand would then have been the “principal demand” in the case.
 

 The court in
 
 Herzog
 
 found that the re-conventional demand must be considered in determining the right to a jury trial in cases arising under the articles governing compulsory reconventional demands, and that any other rule would make the right to a jury trial dependent on a “race to the courthouse,” thereby “violat[ing] the spirit of the law favoring jury trial.”
 
 Id.
 

 Based upon the foregoing, Smith is not precluded from a jury trial, and the trial court should have denied the motion to strike her jury demand. Accordingly, we reverse the portion of the judgment granting the motion to strike.
 

 The Dean Morris Exception of Prescription
 

 Dean Morris filed an exception of prescription, arguing that Smith’s claims against it for due process violations under 42 U.S.C. 1983, for causing the wrongful seizure by executory process, had prescribed. The trial court granted the exception. Smith argues that the suit was pending until the August 2009 dismissal without prejudice, and that her September 2009 filing was timely. We must agree.
 

 Prescriptive statutes are to be strictly construed to permit an action, and if there are two permissive interpretations of a prescriptive statute, the court should ^adopt the one which would maintain, rather than bar, the action.
 
 Costello v. Am. Cas. Co. of Reading, Pa.,
 
 562 So.2d 1142 (La.App. 4 Cir.),
 
 unit denied,
 
 567 So.2d 101 (La.1990). “An interruption of prescription resulting from the filing of a suit in a competent court and in the proper venue or within the prescriptive period
 
 continues as long as the suit is pending.”
 
 La.Civ.Code art. 3463 (emphasis added). The interruption of prescription “is only considered to have never occurred if the plaintiff abandons, voluntarily dismisses, or fails to prosecute the suit at trial.”
 
 Batson v. Cherokee Beach and Campgrounds, Inc.,
 
 530 So.2d 1128, 1130 (La.1988); La.Civ.Code art. 3463. Interruption of prescription “arising from the pen-dency of a suit against the first tortfeasor ends only at the time of the judgment of dismissal.”
 
 Dark v. Marshall,
 
 41,711, p. 7 (La.App. 2 Cir. 12/13/06), 945 So.2d 246, 250. Prescription under Article 3463 begins to run anew upon an involuntary dismissal without prejudice.
 
 Batson,
 
 530 So.2d 1128.
 

 In
 
 Hebert v. Doctors Memorial Hospital,
 
 486 So.2d 717 (La.1986) (partially su-perceded by statute on an unrelated issue), the court held that the lawsuit against the hospital was “pending” from the moment it was filed in 1976 until it was dismissed by a final judgment of the court in 1984. Hence, the addition of a solidary obligor in 1983, over a year after the settlement with the original defendant, was timely. The Louisiana Supreme Court’s analysis of “pending” is instructive. It was repeated in
 
 Segura v. Frank,
 
 93-1271 (La.1/14/94), 630 So.2d 714,
 
 cert. denied, Allstate Ins. Co. v. Louisiana Ins. Guar. Ass’n,
 
 511 U.S. 1142, 114 S.Ct. 2165, 128 L.Ed.2d 887 (1994), as follows:
 

 This court considered the nature of a “pending” lawsuit in
 
 Hebert v. Doctors Memorial Hospital,
 
 486 So.2d 717 (La.1986).... Consulting Black’s Law Dictionary (5th ed.1979) at page 1021, the court found
 

 that “an action or suit is ‘pending’ from its inception until the rendition of final | ^judgment.” It defines “Pen-dency” at page 1020, as the “state of an action, etc., after it has begun and before the final disposition of it.” And final disposition connotes a state of affairs “such that nothing further remains to fix the rights and obligations of the parties.”
 

 
 *1051
 

 Segura,
 
 630 So.2d at 726-27 (quoting
 
 Hebert,
 
 486 So.2d at 720).
 

 Here, prescription was interrupted by the pending Chase suit and by Smith’s reasserted incidental demands until Judge Lewellyan’s judgment of dismissal without prejudice on August 3, 2009. Smith’s suit against Dean Morris on September 17, 2009, was therefore timely.
 
 [9]
 

 Dean Morris asserts that from the date of our affirming the dismissal on May 21, 2008, until Smith’s third party claim against it on September 17, 2009, was a year and four months, indicating that the claim was four months too late.
 
 [10]
 
 We disagree. All dismissals in this case were without prejudice, specifically entitling | ⅞,¡Smith to bring her demands again, pursuant to La.Code Civ.P. art. 1673.
 
 [11]
 
 The first Chase suit was pending, and Smith’s re-asserted demands were pending, until Judge Lewellyan’s dismissal on August 3, 2009. Our 2008 affirmance of the first dismissal (11/2/06) did not address Smith’s re-asserted demands, which occurred
 
 after
 
 the dismissal, but before our affirmation on appeal. The re-asserted demands were the subject of a hearing in July 2009 and were not dismissed until Judge Lewel-lyan’s judgment in August 2009.
 

 We have held above that Smith’s reconvention against Chase in Suit # 1 was compulsory. A compulsory demand must be brought in the suit against the defendant/plaintiff-in-reconvention. Accordingly, Smith’s re-assertions against Chase in Suit # 1, following the first dismissal without prejudice, constitute the bringing of a “new suit” by Smith. “Pleadings should be liberally construed so as to give the pleader an opportunity to present his evidence and to achieve substantial justice.”
 
 Jackson v. Housing Auth. of New Orleans,
 
 478 So.2d 911, 913 (La.App. 4 Cir.1985) (citations omitted).
 
 [12]
 
 
 *1052
 
 Only after the re-assertions were dismissed by Judge Lewellyan in August 2009 did prescription begin to run anew. Smith filed six weeks later against Chase
 
 and
 
 Dean Morris, when she reconvened in the Mellon suit, Suit # 2, against her.
 

 Pursuant to La.Civ.Code art. 3463, Revision Comment (b):
 

 | a7[I]f an interruption results and the action is dismissed without prejudice, the period during which the action was pending does not count toward the accrual of prescription. The plaintiff then has the full prescriptive period within which to bring a new action.
 

 Prescription begins to run anew from the date of dismissal of the suit which interrupts prescription.
 
 Brister v. Sw. La. Hosp. Ass’n,
 
 624 So.2d 970 (La.App. 3 Cir.1993). In this case, the date of the pertinent dismissal was August 3, 2009, not May 21, 2008.
 

 Dean Morris relies on
 
 Crook v. White,
 
 393 So.2d 782, 784 (La.App. 2 Cir.1981), where it was held that a plaintiff could not amend his petition in a dismissed suit, but had to bring a new suit. That case is inapposite. It did not involve a compulsory reconventional demand, and Smith’s reassertion of her suit in Chase’s Suit # 1 was not an amendment. Under the facts of this case, it was a new suit, to which she was entitled pursuant to a dismissal without prejudice.
 

 Dean Morris has argued that prescription was not interrupted as to it because it was not named in the re-asserted demands against Chase. Smith argues that interruption against one solidary or joint tort-feasor is interruption as to all. Pursuant to La.Civ.Code art. 2324, a person who conspires with another to commit an intentional or willful act is answerable “in soli-do” for the damage caused by the act. La.Civ.Code art. 2324(A). If the liability is not solidary, it is joint and divisible, rendering the joint tortfeasors only liable for each one’s own percentage of the fault. La.Civ.Code art. 2324(B). “Interruption of prescription against one joint tortfeasor is effective against all joint tortfeasors.” La. Civ.Code art. 2324(C).
 

 Here, Smith asserts that her counsel told Chase, and Dean Morris as counsel for Chase, that they could not proceed against Smith via executory process and that they willfully went forward anyway in violation of her due process rights. Under 42 U.S.C. 1983, Dean Morris is solidarily liable with Chase because it was the l^law firm representing Chase in the executory process against Smith in 2004, and the attorney can be sued along with the creditor for such violations. Prescription is interrupted as to Dean Morris because it was interrupted as to Chase.
 

 V.
 

 CONCLUSION
 

 Based upon the foregoing, the denial of Smith’s exception of no right of action is affirmed. The granting of the motion to strike the jury demand, and the granting of the exceptions of no cause of action, improper cumulation of actions, and prescription, are reversed.
 

 AFFIRMED IN PART; REVERSED IN PART.
 

 [1]
 

 . On appeal, Smith alleged that she faxed copies of her incidental demands to the parties, but initially asked that service by the sheriff be withheld as there was an oral agreement between counsel that Smith would be allowed time to pursue her suit against the mortgage insurer, which was removed to federal court.
 

 [2]
 

 . La.R.S. 10:3-309 addresses missing instruments, such as the original note apparently declared lost in the present case; and R.S. 10:3-418(d) appears to address checks paid by mistake.
 

 [3]
 

 . Chase and Mellon have argued
 
 Mitchell v. Valteau,
 
 09-1095 (La.App. 4 Cir. 1/27/10), 30 So.3d 1108, which we find inapplicable because there, injunctive relief was denied, and the seizure occurred
 
 after
 
 the borrower defaulted on a reinstatement agreement.
 

 [4]
 

 .
 
 Smigura
 
 found wrongful seizure and conversion under state law.
 

 [5]
 

 . In
 
 Pitre,
 
 Dixie had been assigned the note and chattel mortgage on the Pitres' trailer home and sued to enforce the delinquent loan by executory process. The appellate court had already addressed the issue of executory process and its constitutionality and would not revisit the issue. The court did, however, find wrongful seizure under Article 2315 of items inside the trailer, because the sheriff seized the trailer without adequate notice. The court held the sheriff and the FDIC, as successor to Dixie, liable for the failure to provide the Pitres with adequate notice.
 

 [6]
 

 . For example, thirty days of interest on Smith’s balance, alleged by Mellon to be $63,312.75, at a rate of 10.875%, is $565.91, leaving $46.97 to be applied to the principal balance in that payment. If the payment were to come in thirty-two days after the last posting, the interest on $63,312.75 would be $603.63, leaving only $9.24 to be applied to the principal balance.
 

 [7]
 

 . "Except as otherwise provided, the nature and amount of the principal demand shall determine whether any issue in the principal or incidental demand is triable by jury.” La. Code Civ.P. art. 1731(B).
 

 [8]
 

 . In the
 
 Hy-Octane
 
 case we discuss the goals of judicial economy and fairness in the 1990 amendment to La.Code Civ.P. art. 1061 and La.R.S. 13:4231, where the focus was on the transaction or occurrence rather than tire cause of action.
 

 [9]
 

 .Several "suits” and several dismissals
 
 without prejudice
 
 occurred in this action:
 

 11/10/04 Chase foreclosed against Smith via Executory process (Suit #1), serving her on 12/08/04.
 

 09/12/05 Smith reconvened against Chase and third-partied Saxon for wrongful seizure, conversion, and 42 U.S.C. 1983 claims, naming Dean Morris as an actor in the section 1983 claims.
 

 11/02/06 Trial court issued judgment dismissing Chase, Saxon, and Dean Morris,
 
 without
 
 prejudice.
 

 _/_/_ While the appeal was pending, Smith re-asserted her demands against Chase and Saxon, who responded with various exceptions. We have no dates for those pleadings, but all parties have stated that Smith’s re-asserted demands in Suit # 1 were filed after the dismissal but "while the appeal was pending.”
 

 05/21/08 We affirmed the 2006 dismissal
 
 without
 
 prejudice for failure to serve.
 

 07/30/09 Mellon filed an ordinary proceeding to enforce the loan (Suit # 2).
 

 08/03/09 Judge Lewellyan issued judgment dismissing Suit # 1,
 
 without
 
 prejudice.
 

 09/17/09 Smith filed a reconventional demand against Mellon and third-partied Chase
 
 and
 
 Dean Morris, for wrongful seizure, conversion, and due process violations under 42 U.S.C. 1983.
 

 [10]
 

 . A claim for due process violations under 42 U.S.C. 1983 is a tort claim subject to a one year prescriptive period. La.Civ.Code art. 3492.
 
 See SS v. State ex rel. Dept. of Social Services,
 
 02-831 (La.12/4/02), 831 So.2d 926.
 

 [11]
 

 . "A judgment of dismissal with prejudice shall have the effect of a final judgment of absolute dismissal after trial. A judgment of dismissal without prejudice shall not constitute a bar to another suit on the same cause of action.” La.Code Civ.P. art. 1673.
 

 [12]
 

 . In
 
 Jackson,
 
 a father's suit was dismissed because he failed to assert procedural capacity over his injured illegitimate child. The father and the child’s grandmother, the court-appointed tutrix, filed a joint motion to intervene and join, and a supplemental and amending petition, re-urging the facts of the father’s petition. The defendants argued that the pleadings, filed in a dismissed action, were ineffective. The fourth circuit disagreed, finding that the pleadings were intend
 
 *1052
 
 ed to re-urge the identical claim made in the original petition and to name the proper party as plaintiff; both claims arose out of the same factual situation; and both plaintiffs shared a community of interest. The court found that the father's suit interrupted prescription, and the new pleadings were filed within the prescriptive period as extended by the interruption. Hence, the grandmother's "suit” was timely.