CRAIN, J.
lain this foreclosure proceeding, the plaintiff appeals a judgment granting a preliminary injunction enjoining the sale of certain immovable property by the use of executory process. We reverse and remand.
FACTS AND PROCEDURAL HISTORY
U.S. Bank National Association as Trustee for RFMSI 2005S7 commenced this foreclosure proceeding by filing a petition for executory process against Walter C. Dumas, alleging that Dumas had defaulted on a promissory note secured by a mortgage on certain immovable property located in East Baton Rouge Parish, Louisiana. U.S. Bank alleged that it was entitled to enforce the promissory note and attached the original of the note to the petition along with a certified copy of the mortgage previously recorded in the mortgage records for East Baton Rouge Parish. Pursuant to U.S. Bank’s request, the trial court ordered the issuance of a writ of seizure and sale that commanded the Sheriff to seize and sell the property.
One day before the scheduled sale, Dumas filed a petition for injunction seeking to arrest the seizure and sale of the property and requesting damages and attorney’s fees. Although Louisiana Code of Civil Procedure article 2752 prohibits the granting of a temporary restraining order to arrest the seizure and sale of immovable property, Dumas requested and obtained an ex parte “Stay Order” that prohibited the Sheriff from proceeding with the sale. In response to the claim for damages, U.S. Bank filed exceptions of improper cumulation of actions, improper use of summary proceedings, and an exception of no cause of action. After a hearing to consider the request for a preliminary injunction and the merits of the exceptions, the trial court granted a preliminary injunction enjoining U.S. Bank from pursuing a sale of the property by or through the use of executo-ry process. The judgment further con *33 verted the matter to an ordinary proceeding and described as “moot” U.S. Bank’s exceptions because Dumas “waived the request for the | ^damages.” U.S. Bank appeals and asserts that the trial court erred in granting the preliminary injunction and in converting the executory proceeding to an ordinary proceeding.
LAW AND ANALYSIS
A person seeking to enforce a mortgage in an executory proceeding must file a petition praying for the seizure and sale of the property affected by the mortgage and must submit with the petition authentic evidence of (1) the note, bond, or other instrument evidencing the obligation secured by the mortgage, and (2) the authentic act of mortgage on the immovable property importing a confession of judgment. La.Code Civ. Pro. arts. 2634 and 2635A; Wells Fargo Bank, N.A. v. Settoon, 12-1980 (LaApp. 1 Cir.6/7/13), 120 So.3d 757, 759. The note, bond, or other instrument evidencing the obligation secured by the mortgage and paraphed for identification with the act of mortgage is deemed to be authentic for purposes of executory process. La.Code Civ. Pro. art. 2636(1). Signatures affixed to the instrument secured by the mortgage are presumed genuine, and no further evidence of those signatures is required for the purposes of exec-utory process. See La. R.S. 9:4422(1); Wells Fargo Bank, 120 So.3d at 759.
The defendant in an executory proceeding may arrest the seizure and sale of the property by injunction when the debt secured by the mortgage is extinguished, or is legally unenforceable, or if the procedure required by law for an exec-utory proceeding has not been followed. La.Code Civ. Pro. art. 2751. The applicant for a preliminary injunction need make only a prima facie showing that he will prevail on the merits. Wells Fargo Bank, 120 So.3d at 760; Paddison Builders, Inc. v. Tumclijf 95-1753 (LaApp. 1 Cir.4/4/96), 672 So.2d 1133, 1136, unit denied, 96-1675 (La.10/4/96), 679 So.2d 1386. The decision to grant or deny a preliminary injunction lies within the sound discretion of the trial court. Absent a clear abuse of this discretion, the trial court’s ruling will not be disturbed on |4appeal. Wells Fargo Bank, 120 So.3d at 760; City of Baton Rouge/Parish of East Baton Rouge v. 200 Government Street, LLC, 08-0510 (LaApp. 1 Cir.9/23/08), 995 So.2d 32, 36, writ denied., 08-2554 (La.1/9/09), 998 So.2d 726.
U.S. Bank attached to its petition the original note, which was paraphed for identification with the mortgage, and a certified copy of the mortgage. The note was signed by Dumas as the maker and was made payable to the order of the “Lender,” who is identified as Homecomings Financial Network, Inc. The note further reflects that it was indorsed on behalf of Homecomings Financial with the notation “WITHOUT RECOURSE PAY TO THE ORDER OF RESIDENTIAL FUNDING CORPORATION.” An indorsement on behalf of Residential Funding Corporation then appears below the following language: “PAY TO THE ORDER OF U.S. Bank National Association as Trustee WITHOUT RECOURSE.”
The mortgage identifies Dumas as the “Borrower,” and it was signed by him before a notary and two witnesses. The agreement further names Homecomings Financial as the “Lender” and sets forth the date and basic terms of the promissory note, sometimes referenced as the “Loan.” The mortgagee is identified as Mortgage Electronic Registration System, Inc. (“MERS”), described in the agreement as “a separate corporation that is acting solely as a nominee for Lender and Lender’s successors and assigns.” According to the *34 mortgage, the instrument “secures to Lender ... the repayment of the Loan” and provides that Dumas “does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender’s successors and assigns) and to the successors and assigns of MERS, with power of sale, the following described property,” which is followed by a reference to the legal description of the subject property.
On appeal U.S. Bank assigns as error the trial court’s granting of the preliminary injunction because Dumas did not articulate a legal basis for arresting the seizure and sale. This general assignment of error is then supplemented with ^assignments that are specific to the arguments advanced by Dumas in support of his petition for injunction. The contentions that Dumas pursued before the trial court and continues to assert on appeal, or asserts for the first time on appeal, are the following:
(1) U.S. Bank did not produce authentic evidence of the mortgage;
(2) The confession of judgment in the mortgage is defective;
(3) The petition is fatally defective because U.S. Bank did not allege that it is the “holder” of the promissory note, or, alternatively, U.S. Bank has no right to enforce the promissory note because the identified trust does not exist;
(4) Dumas was not notified of the transfer of the promissory note in violation of 15 U.S.C. 1641 and 12 U.S.C. 2601, et seq.;
(5) U.S. Bank did not produce corporate resolutions authorizing the indorse-ments on the promissory note;
(6) The indorsements were made by rubber stamps and are not signatures;
(7) The promissory note and mortgage are separately owned and not enforceable by U.S. Bank;
(8) The verification of the petition was deficient;
(9) The indorsements of the promissory note are not in authentic form; and
(10) An instrument attached to the petition that purported to transfer the note on behalf of U.S. Bank to U.S. Bank was deficient.
1. Authentic Evidence of Mortgage
The mortgage on the property was recorded with the Clerk of Court for East Baton Rouge Parish on July 27, 2005. The copy of the mortgage attached to the petition contains a stamp on each page by the Clerk of Court confirming that .it is a “Certified True and Correct Copy.” This certification is accompanied by the Clerk’s seal, his name, and the date and time the copy was generated.
A certified copy of the mortgage is deemed to be authentic pursuant to Louisiana Code of Civil Procedure article 2636(2). The requirements for a | (¡certified copy of a document for purposes of execu-tory process are set forth in Louisiana Revised Statute 13:4102D(1), which provides (emphasis added):
Whenever the law requires a certified copy of any document ... for purposes of executory process, a notary public who has the original or a copy of such document on file in his office, custodian of notarial records, or clerk of court shall note on the copy of the document that it is a correct copy and may include words such as “certified copy”, “true copy”, or any other words which reasonably indicate that the copy of the document is a certified copy, and the copy so certified shall be deemed authentic evidence.
*35 The copy of the mortgage certified as true and correct by the East Baton Rouge Parish Clerk of Court satisfies the requirements of Section 4102D(1).
Dumas cites Bank of New York Mellon v. Smith, 11-60 (La.App. 3 Cir.6/29/11), 71 So.3d 1034, 1043, mil denied, 11-2080 (La.11/18/11), 75 So.3d 462, wherein the court stated that authentic evidence means “the instruments of the mortgage loan must be originals or copies that are certified by the same notary before whom the instruments were initially executed.” Dumas thus suggests that only the notary who executed the mortgage can certify a copy of the instrument for purposes of executory process. This assertion fails to recognize that Bank of New York Mellon involved a suit for executory process where the original promissory note had been lost, and the seizing creditor attached uncertified copies of the note and mortgage to his petition. Bank of New York Mellon, 71 So.3d at 1038, 1043. Under those circumstances, the court stated that the “instruments of the mortgage loan” must be originals or copies certified as true by the same notary before whom the instruments were initially executed. Bank of New York Mellon, 71 So.3d at 1043.
We are not confronted with an executory proceeding involving a lost note, nor did U.S. Bank attempt to utilize uncertified copies of the note and mortgage to establish its right to use executory process. Dumas does not dispute that U.S. Bank attached the original of the promissory note to its petition. U.S. Bank also ¡7subinitted a properly certified copy of the mortgage that is deemed authentic for purposes of executory process pursuant to
Artiele 2636(2) and Louisiana Revised Statute 13:4102D(1). Dumas’ argument that U.S. Bank failed to produce authentic evidence of the mortgage lacks merit.[1]
2. Confession of Judgment
Dumas next contends that the confession of judgment contained in the mortgage is not sufficient to support the use of executory process. Pursuant to Louisiana Code of Civil Procedure article 2631, exec-utory process is available to enforce a mortgage “importing a confession of judgment.” An act evidencing a mortgage or privilege imports a confession of judgment when the obligor therein acknowledges the obligation secured thereby, whether then existing or to arise thereafter, and confesses judgment thereon if the obligation is not paid at maturity. La.Code Civ. Pro. art. 2632.
The mortgage contains the following pertinent language in paragraph 23:
Foreclosure. Following Lender’s acceleration of payment, Lender may commence appropriate foreclosure proceedings under this Security Instrument under ordinary or executory process, under which Lender may cause the Property to be immediately seized and sold, with or without appraisal.... For purposes of foreclosure under executory process procedures, Borrower confesses judgment and acknowledges to be indebted to Lender for all sums secured by this Security Instrument, in principal, interest, costs, expenses, attorneys’ fees and other fees and charges.
Under paragraph 22 of the mortgage, the Lender can accelerate the payment of the *36 promissory note “following Borrower’s failure to pay principal, interest, and other fees and charges as provided” in the note.
Dumas argues that this language does not conform to Louisiana Code of Civil Procedure article 2632 because it does not contain the phrase “if the ^obligation is not paid at maturity.” For support, Dumas quotes an excerpt from Bank of New York Mellon wherein the court observed that a confession of judgment in a mortgage did not contain the phrase “if the obligation is not paid at maturity” Bank of New York Mellon, 71 So.3d at 1043, However, the court did not attribute any substantive consequences to the omission of that phrase and based its ruling on other grounds. See Bank of New York Mellon, 71 So.3d at 1044-45.[2]
In paragraph 23 of Dumas’ mortgage, he “confesses judgment and acknowledges to be indebted to Lender for all sums” secured by the mortgage. That paragraph becomes applicable only in the event of an acceleration of the promissory note, which under paragraph 22, may only occur upon Dumas’ “failure to pay principal, interest, and other fees and charges as provided” in the note. These provisions are sufficient to satisfy the requirements for a confession of judgment under Article 2632. See Regions Bank v. Rauch, 12-0232 (La.App. 1 Cir.12/21/12), 2012 WL 6677790, unit not considered, 13-0201 (La.4/1/13), 110 So.3d 134, reconsideration denied, 13-0201 (La.5/3/13), 112 So.3d 854 (clause in mortgage providing that debtor “confesses judgment and acknowledges to be indebted to [lender]” conformed with Article 2632). We find no merit in Dumas’ argument that the mortgage does not contain a sufficient confession of judgment.
3. Allegations of Petition and U.S. Bank’s Right to Enforce Instrument
Dumas asserts that U.S. Bank’s petition is fatally defective because the bank does not allege that it is the “holder” or the owner of the promissory note. According to Dumas, U.S. Bank failed to allege any of the essential requirements of Louisiana Revised Statute 10:3-301, which provides:
| fl“Person entitled to enforce” an instrument means (i) the holder of the instrument, (ii) a nonholder in possession of the instrument who has the rights of a holder, or (iii) a person not in possession of the instrument who is entitled to enforce the instrument pursuant to R.S. 10:3-309 or 10:3 — 418(d). A person may be a person entitled to enforce the instrument even though the person is not the owner of the instrument or is in wrongful possession of the instrument.
The allegations of the petition confirm that U.S. Bank properly alleged its right to enforce the note. U.S. Bank alleged that it “is entitled to enforce the promissory note” and submitted the original of the note with the petition. The note is specially indorsed, “PAY TO THE ORDER OF U.S. Bank National Association as Trustee WITHOUT RECOURSE.” See La. R.S. 10:3-205(a). Pursuant to Section 3-301, an instrument may be enforced by the “holder of the instrument” or “a nonholder in possession of the instrument who has the rights of a holder.” A “holder” is defined, *37 in part, as “the person in possession of a negotiable instrument that is payable either to bearer or to an identified person that is the person in possession.” La. R.S. 10:1 — 201(21)(A). When it filed the petition for executory process, U.S., Bank presented the original of the promissory note, which states that it is payable to U.S. Bank, as a trustee; and the bank, in its capacity as a trustee, alleged that it was entitled to enforce the note. These allegations satisfy the requirements of Section 3-301. See Deutsche Bank Trust Company America v. Ochoa, 12-800 (La.App. 5 Cir.5/23/13), 120 So.3d 735, 741 (bank was “person entitled to enforce” a promissory note under Section 3-301 where it was in physical possession of the note and alleged that it was “entitled to enforce” the note). We find no merit to this argument.
In a related defense, Dumas contends that U.S. Bank has no right to enforce the promissory note as a trustee for “RFMSI 2005S7” because no trust exists by that name. Dumas relies on an affidavit and a supplemental affidavit of Linda Zimmerman, who represents that she is an expert in foreclosure and mortgage documentation examination. According to Zimmerman, the “Dumas loan was | ^incorporated into” a trust named “RFMSI Series 2005 S-7 Trust.” Zimmerman opines that U.S. Bank “is attempting to represent a non-existent entity” and “has no standing to bring this suit,” further offering, “I[n] Louisiana I believe it is termed ‘No Right of Action’ because it has no interest or ownership in the promissory note or mortgage.”
This defense places undue emphasis on the precise name of the trust and incorrectly suggests that the trust is the proper party to enforce an instrument that is payable to the trustee. A trust “is a relationship resulting from the transfer of title to property to a person to be administered by him as a fiduciary for the benefit of another.” La. R.S. 9:1731. Under Louisiana Revised Statute 10:3 — 110(c)(2)(i), if an instrument is payable to “a trust, an estate, or a person described as trustee or representative of a trust or estate, the instrument is payable to the trustee, the representative, or a successor of either, whether or not the beneficiary or estate is also named.” (Emphasis added). Similarly, Louisiana Code of Civil Procedure article 699 provides, “Except as otherwise provided by law, the trustee of an express trust is the proper plaintiff to sue to enforce a right of the trust estate.”
U.S. Bank, in its capacity as a trustee, is the payee of the promissory note and was in possession of the original promissory note when the petition was filed, and therefore is the proper plaintiff in this proceeding. The trust, whether labeled “RFMSI 2005S7” or “RFMSI Series 2005 S-7 Trust,” is a relationship and is not a proper plaintiff to enforce the promissory note. See La. R.S. 9:1731; La. R.S. 10:3-110(c)(2)(i); La.Code of Civ. Pro. art. 699. See also Howard Marshall Charitable Remainder Annuity Trust, 97-1718 (La.3/4/98), 709 So.2d 662, 667(noting that “a trust is not a ‘juridical person’ in the strict sense of the word”); La. Civ.Code art. 549, Revision Comments (“a trust ... is a ‘relationship,’ not an entity”). Accordingly, the purported discrepancies in the name of the trust do not affect the right of U.S. Bank, as the trustee, to enforce the promissory note.
InDumas also argues that the promissory note was “transfer[ed] to” the trust after the “closing date,” and is therefore null and void, citing Zimmerman’s affidavit and the affidavit of Joseph Es-quivel, who attests that he is an expert in mortgage securitization analysis and chain of custody analysis. According to those affidavits, the trust is governed by a pool *38 ing and servicing agreement (“PSA”) that is subject to the law of New York and provides that the transfer and sale of any interest in a mortgage to the trust should have been done on or before the closing date.
The affidavits are conflicting as to the actual “closing date.” Esquivel initially identified a “cutoff date” of November 1, 2005, but later stated that the “closing date” was November 23, 2005. Zimmerman attested that the closing date was about two years later on either October 30, 2007 or November 1, 2007. Despite this uncertainty, the Zimmerman affidavit offered by Dumas directly contradicts his claim that the promissory note and mortgage were transferred to the trustee after the closing date. According to Zimmerman, “The Trust (RFMSI Series 2005 S-7 Trust) documents reflect that the Dumas loan was incorporated into the Trust before the closing or Cut-Off dates.” Es-quivel did not contradict this statement and only stated that no evidence had been presented to confirm that the transaction occurred before the closing date. According to Esquivel, “[Tjypically a promissory note is never physically delivered into the possession” of the trust, but whether such a transfer occurred “can be easily confirmed ... by checking with the custodian of the documents as ... it was listed to exist in the RFMSI 2005-S7 Trust.” He then added, “Until then, there is no evidence the ... Trust ever in any manner possessed this specific loan asset before the cutoff date.... ” (Emphasis deleted).
We are not aware of any statute or jurisprudence in Louisiana suggesting that the acquisition of a promissory note and mortgage after the “closing date” of a 112trust prevents the trustee from enforcing the note and mortgage. Dumas recognized in the promissory note that the “Lender may transfer” the note, and he remained liable for the payment of the note after any transfer in accordance with Louisiana Revised Statute 10:3^412. Dumas is neither a party'to the PSA agreement, nor has he alleged any damages as a result of the alleged breach of the PSA.[3] This argument by Dumas has no merit.
4. Notifications Required by 15 U.S.C 1641 and 12 U.S.C. 2601, et seq.
Dumas claims that he was not provided notice of the assignment, sale, or transfer of the promissory note and mortgage until the foreclosure, in violation of 15 U.S.C. 1641, the “Truth in Lending Act,” and 12 U.S.C. 2601, et seq., the Real Estate Settlement Procedures Act (“RES-PA”).
Not later than 30 days after the sale or assignment of a mortgage loan, the Truth in Lending Act requires the assignee to notify the borrower of the identity of the new creditor and its contact information, the date of the transfer, how to reach an agent or party having authority to act on behalf of the new creditor, the location of the place where the transfer of ownership of the debt is recorded, and other relevant information regarding the new creditor. 15 U.S.C. 1641(g). However, the Truth in *39 Lending Act does not provide that the failure to provide the notice is a defense to repayment of the debt, or otherwise prevents the creditor from invoking foreclosure proceedings if the borrower defaults. Instead, 15 U.S.C. 1640(a)(1) imposes liability on the creditor for “any actual damage sustained by such person” | iaas a result of the creditor’s failure to provide the required notices.[4] A defense to a foreclosure proceeding is granted only by Section 1640(k)(l), which provides that a consumer may assert a violation of certain requirements of Section 1639b(c) (governing the payment of compensation or origination fees to a loan originator) or 1639c(a) (creditor’s obligation to make a reasonable and good faith determination of a consumer’s reasonable ability to repay the loan) as a matter of defense to a foreclosure by way of recoupment or set off in the amount of the damages to which the consumer would be entitled to recover, plus costs and attorney’s fees. 15 U.S.C. 1640(k)(l). Dumas alleges no violations, recoupment, or set off concerning Sections 1639b(c) or 1639c(a); therefore, his assertion that the Truth in Lending Act prohibits the use of executory process in this proceeding has no merit.
With respect to RESPA, Section 2605(b) requires that a loan “servicer” notify the borrower in writing of any assignment, sale or transfer of the “servicing of the loan” to any other person. A “servi-cer” is the “person responsible for servicing of a loan (including the person who makes or holds a loan if such person also services the loan).” “Servicing” means “receiving any scheduled periodic payments from a borrower pursuant to the terms of any loan, including amounts for escrow accounts described in section 2609 of this title, and making the payments of principal and interest and such other payments with respect to the amounts received from the borrower as may be required pursuant to the terms of the loan.” 12 U.S.C. 2606(i)(2) and (3).
The only evidence presented concerning the loan servicer is contained in the Es-quivel affidavit, which provides that the “loan is being serviced by Residential Funding Corporation with the clarifying code ... RFMSI 2005-S7.” Dumas provided no evidence of any assignment, sale or transfer of the loan servicing. Therefore, he failed to make a prima facie showing that he was entitled to a |14RESPA notice. We further note that an individuals remedy for a violation of Section 2605 is a claim for actual damages sustained by the borrower as a result of the failure to provide the notice, and any additional damages the court may allow, in the case of a pattern or practice of noncompliance, in an amount not to exceed $2,000.00. 12 U.S.C. 2605(f)(1) Under the facts of this case, RESPA does not prohibit U.S. Bank from using executory process to enforce the promissory note and mortgage.
We note that Louisiana Civil Code article 2643 provides that the assignment of a right is effective against the debtor only from the time the debtor has actual knowledge, or has been given notice of the assignment. However, Dumas does not deny receiving notice of the transfer of the note, only that he did not receive notice of the assignment “until such time as there was the attempted foreclosure.” Service of a petition to enforce an assigned obligation is sufficient notice of the assignment pursuant to Article 2643. See Fidelity National Bank of Baton Rouge v. *40 Calhoun, 08-1685 (La.App..l Cir.3/27/09), 11 So.3d 1119, 1126. This principle is particularly applicable in the present case where Dumas does not allege that he failed to pay the note because of any uncertainty or confusion concerning the as-signee’s identity.
5. Corporate Resolutions Authorizing Indorsements
Dumas argues that U.S. Bank was obligated to provide corporate resolutions confirming the authority of the individuals who signed the promissory- note on behalf of Homecomings Financial Network (who indorsed the note payable to the order of Residential Funding Corporation) and Residential Funding Corporation (who indorsed the note payable to the order of U.S. Bank). For authority, Dumas primarily relies upon First Guaranty Bank, Hammond, La. v. Baton Rouge Petroleum Center, Inc., 529 So.2d 834 (La.1987), wherein the supreme court held that a creditor seeking to use executory process was required to offer authentic 1^evidence of a corporate resolution authorizing a corporate debtor to grant the mortgage at issue.[5]
First Guaranty Bank concerns proof of a corporate representative’s authority to grant a mortgage on corporate-owned property, and, on that basis, is distinguishable from the present case wherein Dumas is challenging the authority of corporate representatives to sign a promissory note as indorsers.[6] The authority to sign the promissory note, which qualifies as an “instrument” under Louisiana Revised Statute 10:3-104(b), is governed by Louisiana Revised Statute 10:3-308(a), effective January 1, 1994, which provides in pertinent part:
In an action with respect to an instrument, the authenticity of, and authority to make, each signature on the instrument is admitted unless specifically denied in the pleadings. If the validity of a signature is denied in the pleadings, the burden of establishing validity is on the person claiming validity, but the signature is presumed to be authentic and authorized unless the action is to enforce the liability of the purported signer and the signer is dead or incompetent at the time of trial of the issue of validity of the signature....
(Emphasis added.) The stated exception is not applicable because U.S. Bank is not seeking to enforce any liability of the in-dorsers, so their signatures are presumed to be authentic and authorized. U.S. Bank was not required to present corporate resolutions to prove the authority of the corporate representatives who signed the promissory note. See La. R.S. 10:3-308.[7]
|1fi6. Signatures Stamped on Promissory Note
Dumas next asserts that the in-dorsements of the promissory note on behalf of Homecomings Financial Network *41 and Residential Funding Corporation do not qualify as “signatures” because they were made by stamps and were not handwritten. Therefore, according to Dumas, these stamped indorsements do not fall within the scope of Louisiana Revised Statute 9:4422 which provides, in part, that all “signatures” affixed to a promissory note are presumed genuine and no further evidence of those signatures is required for executory process.
Section 4422 does not define “signature,” but the Louisiana Uniform Commercial Code does define “signed” and “indorsement.” Pursuant to Section 10:1-201(37), “signed” includes “using any symbol executed or adopted with present intention to adopt or accept a writing.” The Uniform Commercial Code (UCC) Comment further explains:
This provision also makes it clear that, as the term “signed” is used in the Uniform Commercial Code, a complete signature is not necessary. The symbol may be printed, stamped or written; it may be by initials or by thumbprint. It may be on any part of the document and in appropriate cases may be found in a billhead or letterhead. No catalog of possible situations can be complete and the court must use common sense and commercial experience in passing upon these matters. The question always is whether the symbol was executed or adopted by the party with present intention to adopt or accept the writing.
La. R.S. 10:1-201, UCC Comment 37 (emphasis added).
“Indorsement” means:
“[A] signature, other than that of a signer as maker, drawer, or acceptor, that alone or accompanied by other words is made on an instrument for the purpose of (i) negotiating the instrument, (ii) restricting payment of the instrument, or (iii) incurring indorser’s liability on the instrument, but regardless of the intent of the signer, a signature and its accompanying words is an indorsement unless the accompanying words, terms of the instrument, place of the signature, or other circumstances unambiguously indicate that the signature was made for a purpose other than indorsement. For the purpose of determining whether a signature is made on an instrument, a paper affixed to the instrument is a part of the instrument.
La. R.S. 10:3.-204(a).
117We are not aware of any Louisiana jurisprudence specifically on point; however, In re Bass, 366 N.C. 464, 738 S.E.2d 173 (2013), is indicative of the approach of the courts of other states that have considered whether an instrument was adequately “signed” by a stamped signature. Similar to the present matter, In re Bass involved U.S. Bank as the foreclosing party in possession of the original note, and Residential Funding Corporation as a pri- or holder who indorsed the note to U.S. Bank. As in the present case, the indorse-ments of the note were made by stamped signatures. The borrower argued that a “mere stamp” was not sufficient “to pass ownership of commercial paper from one lender to another lender.” In re Bass, 738 S.E.2d at 175.
The North Caroline Supreme Court reviewed the same statutory definitions of “signed” and “instrument” found in the Louisiana UCC, along with the comment indicating that a symbol of a signature can be “stamped,” and rejected the borrower’s argument, explaining:
[T]he UCC does not limit a signature to a long-form writing of an individual person’s name. See IB Lary Lawrence, Lawrence’s Anderson on the Uniform Commercial Code § 1-201:385 (3d ed.2012).... Under this broad definition, “[t]he authenticating intent is suffi *42 ciently shown by the fact that the name of a party is written on the line which calls for the name of that party.” Id. § 1-201:390. Even if there might be some irregularities in the signature, the necessary intent can still be found based on the signature itself and other attendant circumstances. Id. § 1-201:405.
[[Image here]]
The contested stamp indicates on its face an intent to transfer the debt.... In addition, the stamp appears on the page of the Note where other, uncontested indorsements were placed. We also observe that the original Note was indeed transferred in accordance with the stamp’s clear intent. The stamp evidences that it was “executed or adopted by the party with present intention to adopt or accept the writing.” N.C.G.S. § 25-1-201 cmt. 87. Under the broad definition of “signature” in N.C.G.S. § 25-1-201 and the accompanying official comment, the stamp ... constitutes a signature.
The stamp therefore was “an indorsement unless the accompanying words, terms of the instrument, place of the signature, or other circumstances unambiguously indicate that the signature was made for a purpose other than in-dorsement.” Id. § 25-3-204(a) (emphasis | isadded). With no unambiguous evidence indicating the signature was made for any other purpose, the stamp was an indorsement that transferred the Note....
In re Bass, 738 S.E.2d at 176-177.
We reach the same conclusion for the stamped signatures on the promissory note at issue herein. The stamped signatures appear on the face of the note on the signature page and are accompanied by instructions to “PAY TO THE ORDER OF” followed by named payees. The original note was transferred to U.S. Bank pursuant to the stamped indorsement on behalf of Residential Funding Corporation. The stamps thus evidence an “intention to adopt or accept a writing” for the purpose of negotiating the promissory note. See La. R.S. 10:1-201(37); La. R.S. 10:3-204(a). The stamped “signatures” are therefore deemed authentic pursuant to Louisiana Revised Statute 9:4422(1).[8] See also La. R.S. 10:3-308(a).
7. Separate Ownership of Promissory Note and Mortgage
Dumas contends that the mortgage was issued to MERS and that MERS never assigned the mortgage. Therefore, according to Dumas, the note and mortgage have been “split,” and U.S. Bank cannot avail itself of the mortgage and foreclose on the property. This defense is not supported by the terms of the mortgage or Louisiana law governing the transfer of notes and mortgages.
The mortgage identifies MERS as the “mortgagee” but explains that MERS is “acting solely as a nominee for Lender and Lender’s successors and assigns.”[9] The *43 promissory note, which is paraphed for identification with the mortgage, is |, identified in the mortgage by date, amount, and maturity. The mortgage provides that it “secures to Lender- ... the repayment of the Loan, and all renewals, extensions and modifications of the Note.” The agreement also confirms that “the Note (together with this Security Agreement) can be sold one or more times without prior notice to Borrower.” In the event of a default, the “Lender may commence appropriate foreclosure proceedings under this Security Instrument under ordinary or executory process, under which Lender may cause the Property to be immediately seized and sold, with or without appraisal....” The terms of the mortgage establish that it was granted to secure payment of the promissory note and authorized the original lender, Homecomings Financial Network, and its assigns the right to seize and sell the property in the event of a default on the note.
The mortgage is an accessory obligation to the debt it secures. La. Civ.Code art. 3282. Louisiana law is well established that the transfer of a note identified with a mortgage transfers the mortgage also. See La. Civ.Code art. 2645 (“assignment of a right includes its accessories such as security rights”); Gaines v. Bonnabel, 168 La. 262, 266, 121 So. 764, 765-66 (1929); Louisiana National Bank of Baton Rouge v. Heroman, 280 So.2d 362, 371 (La.App. 1 Cir.), writ denied, 281 So.2d 755 (La.1973). As explained by the supreme court in Gaines,
The notes were the principal obligation and the mortgage was the accessory. The notes were fully described in the act of mortgage and were identified therewith. When therefore the notes passed from the mortgagee to the plaintiff, such delivery and transfer included all of the accessory obligations, covenants, and stipulations contained in the act of mortgage.
Gaines, 168 La. at 265-66, 121 So. at 765. See also La. Civ.Code art. 2645, Comment (b) (“Under this Article, the transfer of a promissory note also transfers the accessory rights of mortgage and privilege that secure the debt involved”); La. |20Civ.Code art. 3279, Comment (a) (the “mortgage, being an accessory to [the] creditors’ rights, is inseparable from them”).
Consistent with this principle, Louisiana Revised Statute 9:4422(3) provides the following concerning the enforcement of a mortgage by executory process:
The holder of any promissory note, whether negotiable or not, and any-negotiable instrument under this Section may enforce the mortgage or privilege securing such instrument without authentic evidence of the signatures, assignment, pledge, negotiation, or transfer thereof.
Dumas relies on jurisprudence from other states in support of his position that U.S. Bank cannot enforce the mortgage because it was “split” from the note; however, those cases do not address the transfer of a note that also transfers the mortgage. The cited cases address the opposite scenario presented here, and involved a party transferring only the mortgage (the accessory obligation) and not the note (the primary obligation). Under those circumstances, the courts held that the assignee’s acquisition of the mortgage, without the note, did not vest it with any rights because the mortgage only secured payment of the note, which had not been *44 assigned. See Bellistri v. Ocwen Loan Servicing, LLC, 284 S.W.3d 619, 628-24 (Mo.App.E.D.2009) (seizing creditor acquired only the mortgage from MERS and did not acquire note from the holder); Vance v. Fields, 172 So.2d 613, 614 (Fla. 1 Dist.App.1965) (no assignment of the note was intended or accomplished); Sobel v. Mutual Development, Inc., 313 So.2d 77, 78 (Fla. 1 Dist.App.1975) (pledge of a mortgage without reference to the note or obligation secured did not vest any right in the pledge); In re Agard, 444 B.R. 231, 246 (Bankr.E.D.N.Y.2011), vacated in part, BR 8-10-77338 REG, 2012 WL 1043690 (E.D.N.Y.2012) (assignment of mortgage is not sufficient to establish an effective assignment of the note). These cases provide no authority for departing from Louisiana law that an assignment of the note also transfers the mortgage securing payment of the note. La. Civ.Code art. 2645; Gaines, 168 La. at 266, 121 So. at 765-66; Heroman, 280 |21So.2d at 371. Dumas’ argument that the mortgage cannot be enforced by U.S. Bank has no merit.
8. Verification of Petition
Dumas acknowledges in his brief to this court that verification of the petition for executory process is not required; however, he nevertheless urges that “when it occurs, it must be truthful, accurate, and based upon personal knowledge.” The verification is signed by counsel of record “based upon the records provided to affi-ant by the secured party that are kept or obtained in the ordinary course of business of the secured party,” and the affiant attests that the “allegations of fact contained herein are true and correct to the best of [affiant’s] knowledge, information and belief.” Dumas’ specific complaint is that the verification does not affirm that the indor-ser’s signatures are genuine; however, those signatures are presumed genuine pursuant to Louisiana Revised Statute 9:4222(1).[10] Dumas also claims that the verification is without any factual basis, but the affiant confirms that his statements are based upon records provided to him by U.S. Bank.
Furthermore, as Dumas correctly concedes, Louisiana Code of Civil Procedure article 2634 does not require that a petition for executory process be verified. See Ford Motor Credit Co. v. Herron, 234 So.2d 517, 519 (La.App. 3 Cir.1970) (no requirement in Louisiana Code of Civil Procedure that all petitions seeking execu-tory process be verified). While Louisiana Code of Civil Procedure article 2637 permits proof of certain matters by a verified petition or affidavit, such as the necessity of appointing an attorney to represent a party or an agreement to extend or modify an obligation, none of the items identified in that article are ^alleged in this case.[11] Dumas’ claim that deficiencies in the verification precluded the use of executory process is without merit.
9. Authentic Evidence of Indorsements and Transfer of Note
Citing Miller v. Cappel, 36 La. Ann. 264 (1884), Dumas asserts that the indorsements of the note and the transfer thereof are not in the required authentic form. The defect in the proceedings in *45 Miller was the lack of authentic evidence of the signature of the original payee of the note. Miller, 36 La.Ann. at 264. The necessary evidence to establish a signature on an instrument is now governed by Louisiana Revised Statute 9:4422, enacted in 1989, which provides that all signatures on the instrument are “presumed to be genuine and no further evidence is required of these signatures for purposes of executory process.” Therefore, the signatures on the note are presumed genuine and no further evidence was required.
The note contains a special indorsement on its face that rendered it payable to the order of U.S. Bank. See La. R.S. 10:3-205(a). As indorsed, the original note was transferred to the bank, which then became a “person entitled to enforce” the instrument. See La. R.S. 10:3 — 201(b); 3-301; 1-201(21)(A). This is not a case where the seizing party is relying on an act of assignment to establish its rights.[12] The original note presented to the court by U.S. Bank reflects on its face that U.S. Bank has the right to enforce the instrument, and no further evidence was required to establish that right.
It is contended that the Zimmerman affidavit supports a determination that Dumas rebutted the presumption that the indorser’s signatures are genuine, and that Zimmerman “investigated and deposed” Faber (an indorser on the note). However, the affidavit provides only that Zimmerman is “currently investigating” I^Faber and then quotes a “summation” of a purported deposition of Faber. The two sentence “summation” provides:
Upon information and belief, Judy Fa-ber has instructed document custodians in thousands of foreclosure cases to apply her stamped endorsement bearing her name after foreclosure commenced to an allonge and after a consumer had challenged the chain of title in the case. Upon information and belief, Ms. Faber and her document custodian team at facilities described in the Washington Post article attached to this letter have fabricated and changed title in thousands of foreclosure cases.
The “summation” does not identify who deposed Faber, who prepared the summation, or the proceeding in which Faber was deposed; and Zimmerman did not attach the deposition, newspaper article, or “letter” to her affidavit. However, more importantly, the excerpt does not attempt to relate this information to the present case with an explanation as to how Faber could possibly apply her stamped signature to the subject note after the commencement of this proceeding when the original note was attached to the petition and already contained Faber’s stamped signature. U.S. Bank is not relying on an allonge or any other document produced after suit was filed to establish the “chain of title” to the note. Rather, when it filed this proceeding, U.S. Bank presented and filed with the court the original of the note, duly indorsed and made payable on its face to U.S. Bank. The “deposition summation” contained in Zimmerman’s affidavit is not applicable to the facts of this case and does not cast any cloud on the validity of the assignment of the note.
10. Additional Instrument Attached to Petition
Dumas also asserts that an instrument captioned “TRANSFER OF NOTE SECURED BY MORTGAGE” is a photocopy and not in authentic form, and that the person who signed the document on behalf of MERS is not an employee of MERS. U.S. Bank attached this document *46 to its petition, but on appeal the bank does not rely on the “transfer” as a basis to enforce the note and mortgage. The instrument is executed on behalf of MERS and provides that MERS, “as nominee 124for U.S. Bank National Association as Trustee ... does hereby transfer and deliver to U.S. Bank National Association as Trustee RFMSI 2005S7 ... the note ... secured by a mortgage ...” The document purports to transfer the note on behalf of U.S. Bank, as trustee, to U.S. Bank, as trustee for a specific trust, making U.S. Bank both the transferor and the transferee. The bank does not contend that this “transfer” vested it with any rights, and we agree. The document is not necessary to establish U.S. Bank’s right to enforce the promissory note and mortgage, so any alleged deficiencies in the form of the instrument do not prevent the use of execu-tory process.[13]
CONCLUSION
We find that U.S. Bank complied with the requirements for executory process by filing a petition praying for the seizure and sale of the property affected by the mortgage and submitting with the petition (1) the original promissory note payable on its face to U.S. Bank, and (2) a certified copy of an authentic act of mortgage importing a confession of judgment. See La.Code Civ. Pro. arts. 2634, 2635A, and 2636(2); Wells Fargo Bank, 120 So.3d at 759. Dumas failed to make a prima facie showing that the procedure required by law for executory process was not followed, so the trial court erred in granting the preliminary injunction. For these same reasons, the trial court also erred in converting the executory proceeding to an ordinary proceeding. We reverse the trial court’s judgment entering a preliminary injunction restraining, enjoining and prohibiting U.S. Bank irom pursuing a sale of the subject property by or through the use of executory process and converting the exec-utory proceeding to an ordinary proceeding, and 12fiWe remand for further proceedings in accordance herewith. All costs of this appeal are assessed to Walter C. Dumas.
REVERSED AND REMANDED.
WHIPPLE, C.J., dissents and assigns written reasons.
WELCH, J., dissents for reasons assigned C.J., WHIPPLE and signed with permission.

. In support of his argument that U.S. Bank failed to present authentic evidence of the mortgage, Dumas also cites, without explanation, Bankers Trust Co. of California, N.A. v. Cooley, 03-1942 (La.App. 1 Cir.6/25/04), 884 So.2d 594, which involved a lost act of assignment of the note. That case likewise provides no support for the assertion that an act of mortgage certified as true and correct by the Clerk of Court is not authentic evidence pursuant to Article 2636(2) and Section 4102D(1).

. The court reviewed the law of executory process and the creditor’s seizure of the property in the context of exceptions of no cause of action filed in response to the debtor's claims against the creditor and its attorney under 42 U.S.C. 1983. Bank of New York Mellon, 71 So.3d at 1041-44. Finding a sufficient state action had been alleged, the court denied the exceptions, based in part on a finding that the seizure was wrongful because the creditor failed to attach to the petition the original note (which was lost) or certified copies of the note and a mortgage. Bank of New York Mellon, 71 So.3d at 1038, 1044-45.

. Cf. Pearl River Basin Land & Dev. Co., L.L.C. v. State ex rel. Governor's Office of Homeland Sec. & Emergency Preparedness, 09-0084 (La. App. 1 Cir. 10/27/09), 29 So.3d 589, 592 (recognizing that “no action for breach of contract may lie in the absence of privity of contract between the parties”). Courts of other states, including New York, that have considered alleged violations of a PSA trust agreement have held that a borrower obligated under a promissory note in the trust does not have standing to assert a claim for any such violations. See Jenkins v. JP Morgan Chase Bank, N.A., 216 Cal.App.4th 497, 515, 156 Cal.Rptr.3d 912, 927 (2013); Cimerring v. Merrill Lynch Mortgage Investors, Inc., 35 Misc.3d 1242(A), 12, 953 N.Y.S.2d 549, 9 (Sup.Ct.2012).

. Section 1640 also authorizes the recovery of finance charges and other sums in appropriate cases. See 15 U.S.C. 1640(a).

. A rehearing was granted in First Guaranty Bank, but the court held in both the original decision and on rehearing that a corporate resolution authorizing the corporate debtor to grant the mortgage was required for executo-ry process. See First Guaranty Bank, 529 So.2d at 836, and 529 So.2d at 838 (on rehearing).

. See also La. R.S. 13:4103 (deeming certain evidence authentic in suits seeking to enforce a mortgage against a corporate debtor).

.Dumas also cites Elmwood Federal Savings and Loan Association v. M & C Partnership in Commendam, 552 So.2d 1217, 1220 (La.App. 5 Cir.1989), holding that a plaintiff who invoked executory process was required to attach to its petition a corporate resolution authorizing the transfer of the mortgage and the mortgage note. Elmwood Federal Savings was decided before the enactment of Section 308 and is distinguished for that reason.

. Dumas also argues that the present version of Section 4422 does not apply to this case. The statute was amended by 2012 La. Acts, No. 400, effective August 1, 2012, to render it applicable to any "promissory note, whether negotiable or not....” Prior to this amendment, the statute applied to "any negotiable instrument or instrument that would be negotiable but for a limitation of personal liability of the maker....” The amendment is not material to the current proceeding, as the promissory note at issue is a negotiable instrument and thus subject to either version of the statute. See Wells Fargo Bank, 120 So.3d at 759 n. 2.

. Cf. La. R.S, 9:5302 ("A fiduciary for the holders of the obligations secured by the mortgage may be named in the act as mortgagee in trust for the benefit of the creditors. He shall be irrevocably appointed special at-tomey-in-fact for the holders of the obli *43 gations and vested with full power in their behalf to effect and enforce the mortgage for their benefit.”)

. Dumas' reference to Louisiana Revised Statute 10:9-629 is misplaced, as that statute governs executory process seeking enforcement of a “security interest,” which is defined as “an interest in personal property and fixtures.” La. R.S. 10:9-629(a); 1-201(35).

. See also La. R.S. 9:5555 (applicable to executory proceedings involving an obligation not paraphed for identification with the act of mortgage and permitting the obligation to be proved by affidavit or verified petition).

. See, e.g., Cooley, 884 So.2d at 594-595, wherein this court held that authentic evidence was required to prove the assignment of a note where an act of assignment was lost.

. Although a review of the instrument’s form is not necessary for the resolution of this matter, we note that it was executed before a notary and two witnesses, was recorded in the public land records, and the copy in the record has been certified as true and correct by the Clerk of Court. See La. Civ.Code art. 1833; La.Code of Civ. Pro. art. 2636(2); La. R.S. 13:4102D(1). Further, the Zimmerman affidavit, cited by Dumas as establishing that the person who signed the transfer is not an employee of MERS, only states that the signor is not an "officer” of MERS.